**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

CHRISTOPHER SHAWN TUTER,

Defendant-Appellee.

No. 00-5086

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 00-CR-18-C)**

---

Submitted on the briefs:

Stephen C. Lewis, United States Attorney, Lucy O. Creekmore, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellant.

Robert S. Durbin, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.

---

**EBEL**, Circuit Judge.

The government appeals the district court's suppression of evidence discovered during a search of defendant Christopher Tuter's residence executed pursuant to a search warrant. Although we affirm the district court's conclusion that the search warrant was not supported by probable cause, we reverse its determination that the good-faith exception to the exclusionary rule does not apply. [1]

BACKGROUND

On December 21, 1999, a federal magistrate judge issued a search warrant to agents of the federal Bureau of Alcohol, Tobacco and Firearms (ATF) to search the residence of defendant Tuter at 4104 West Princeton Street in Broken Arrow, Oklahoma, for firearms, explosives, and related materials. The search was conducted the next morning and agents discovered sixteen firearms of various makes and models, numerous live rounds of ammunition, four assembled grenades, a readily assembled grenade, a pipe bomb, and other related explosive materials.

The search warrant was issued based upon an affidavit by ATF agent Bruce Magalassi. According to his affidavit, on December 20, 1999, an anonymous

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

caller phoned WeTIP, Inc., a nationwide company that takes anonymous calls regarding crimes and passes the tips along to law enforcement agencies for further investigation. The caller reported to WeTIP that a thirty-eight year old white man named Chris Tuter, living at 4104 West Princeton Street in Broken Arrow, Oklahoma, was making pipe bombs in his garage. The operator took down the caller's information on an intake form, and immediately called Lieutenant Paul Krouter of the Broken Arrow, Oklahoma Police Department, leaving a message on his answering machine. When Krouter heard the phone message he called Agent Magalassi and relayed the information to him.

Agent Magalassi obtained a faxed copy of the WeTIP operator's intake form. It stated:

> SUSPECT MAKES PIPE BOMBS IN HIS GARAGE/ SUSPECT ALSO HAS 2-3 WEAPONS IN HIS HOME/ SUSPECT HAS ONE SON/IAN TUTER AGE 12 LIVING IN THE HOME/ ATTENDS UNION ELEMENTARY OR MIDDLE SCHOOL/ SON HAS BEEN KNOWN TO SHOW WEAPONS TO SCHOOL FRIENDS WHEN THEY COME OVER TO SUSPECT[']S HOME

Appellant's App. at 88. The intake form described the kind of weapons Tuter possessed as "RIFLE/AKA," *id*., and stated Tuter owned a gold colored 1997 Jeep Cherokee. The intake sheet also stated the caller's information was "FIRSTHAND," *id*., but no explanation was given as to how the caller came to have this information.

-3-

Agent Magalassi began an investigation and attempted to corroborate the information provided by the anonymous caller. He verified that a thirty-eight year old white male named Christopher Tuter lived at 4101 West Princeton Street in Broken Arrow, Oklahoma, with his thirty-seven year old wife, Cecily Tuter, and his twelve-year old son Ian. He verified that Cecily Tuter owned a 1997 Jeep Cherokee. He also investigated defendant Tuter's criminal history and learned that Tuter had a 1983 burglary conviction, a 1984 burglary conviction, a 1984 conviction for knowingly concealing stolen property, a 1984 arrest for auto theft and possession of marijuana, and a 1984 arrest for possession of a firearm after a felony conviction. Finally, he learned that the Tuters had reported the theft of a vehicle in 1998, and that two firearms were inside the car at the time of the theft.

Agent Magalassi's affidavit contained several errors and inconsistencies. His affidavit gave an incorrect social security number for defendant Tuter, and misspelled Tuter's name twice. The affidavit stated that the anonymous caller reported that Tuter's son attended a Broken Arrow school. In fact, the caller had correctly reported that the son attended Union elementary or middle school. Agent Magalassi's affidavit also stated the caller reported Tuter as having an "AKA rifle," Appellant's App. at 31, though Agent Magalassi later conceded that no such weapon exists. The intake form, however, actually described the weapons possessed by Tuter as "RIFLE/AKA," which could refer to two different

-4-

weapons, rather than just one. Although Agent Magalassi's affidavit stated that public records indicated the Tuters had lived at the Princeton Street address since 1988, Tuter testified he has only lived there since 1995. Tuter also testified that the 1998 vehicle theft report was filed only by Cecily Tuter, his wife, not by the couple, as stated in the affidavit. Further, based on a description from the Broken Arrow police department, Agent Maglassi described Tuter's Jeep Cherokee in his affidavit as mocha-colored, whereas the anonymous caller described it as gold-colored.

Tuter moved to suppress the evidence discovered at his residence, claiming the warrant's supporting affidavit contained materially false statements and failed to establish probable cause, that the warrant was overly broad, and that the search was executed in an unreasonable manner. After a hearing, the district court found that the errors in the affidavit were insubstantial. However, it suppressed the evidence on the basis that the supporting affidavit did not establish probable cause to justify the issuance of the search warrant. Applying a recent decision of the Supreme Court, *Florida v. J.L.*, 529 U.S. 266 (2000), the court ruled that the supporting affidavit was insufficient to establish probable cause because Agent Magalassi failed to corroborate any of the anonymous tipster's allegations of criminal wrongdoing. The court also rejected the application of a good faith

exception to the exclusionary rule because the affidavit was insufficient to justify the issuance of the warrant.

## DISCUSSION

### I. PROBABLE CAUSE

#### A. Standards of Review

A magistrate judge's task in determining whether probable cause exists to support a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We have stated that a magistrate judge's decision to issue a warrant is "entitled to 'great deference'" from the reviewing court. *United States v. Le*, 173 F.3d 1258, 1265 (10th Cir. 1999) (quoting *United States v. Wittgenstein*, 163 F.3d 1164, 1172 (10th Cir. 1998)). Accordingly, we need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a "'substantial basis'" for determining that probable cause existed. *Id*.; *see also Gates*, 462 U.S. at 238-39. We review de novo the district court's determination of probable cause, *Ornelas v. United States*, 517 U.S. 690, 697 (1996), while

reviewing its findings of historical fact for clear error, *United States v. Barron-Cabrera*, 119 F.3d 1454, 1457 (10th Cir. 1997).

## B. Anonymous Informants

The Supreme Court has adopted a "totality of the circumstances" test to determine when information from a confidential informant or an anonymous tip can establish probable cause. *Gates*, 462 U.S. at 238. The Court has explained that an informant's "'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id*. at 230. In *Gates*, the information came from an anonymous letter which provided no indication of the informant's veracity, reliability, or basis of knowledge. The Court held that the anonymous tip, standing alone, was insufficient to establish probable cause. *Id*. at 227. However, it explained that "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233. The Court found that the anonymous tip in *Gates* was sufficient to establish probable cause because it "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties not easily predicted." *Id*. at 245.

In *Alabama v. White,* 496 U.S. 325 (1990), the Court addressed the standard for determining when an anonymous tip can provide "reasonable suspicion" to

-7-

justify an investigatory stop. [2] The Court recognized that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *J.L.*, 529 U.S. at 270 (quoting *White*, 496 U.S. at 327). In *White*, the Court deemed an anonymous tip sufficiently reliable to justify an investigatory stop because it was highly detailed and police independently corroborated the informant's predictions regarding the suspect's future activity. *Id*. at 332. It reasoned that the caller's ability to predict the suspect's future activity "demonstrated inside information--a special familiarity with [the suspect's] affairs." *Id*. The Court explained that when "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Id*. at 331.

After Agent Magalassi prepared his affidavit and the magistrate judge issued the search warrant in this case, but before the district court ruled on Tuter's motion to suppress the evidence, the Supreme Court decided *J.L.*, 529

---

[2]

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*White*, 496 U.S. at 330.

U.S. 266. In that case, an anonymous caller reported to the police that a young black male wearing a plaid shirt was standing at a particular bus stop and carrying a gun. Police verified that the caller had accurately described the man's location and appearance, and conducted an investigatory stop. The Court ruled the caller's information was inadequate to justify the stop, holding that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id*. at 272. The Court noted that if an anonymous tip provides "predictive information" about "future movements" that officers can corroborate, then officers might have reasonable suspicion, as was found in the "close case" of *White*. *Id*. at 271. The Court concluded that the tip in *J.L.*, however, "lacked the moderate indicia of reliability present in *White*" because it "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id*. The Court ruled that police cannot rely upon "the bare report of an unknown, unaccountable informant who neither explained how he knew about the [alleged criminal activity] nor supplied any basis for believing he had inside information about [the suspect]." *Id*. The Court rejected the argument that "the tip was reliable because its description of the suspect's visual attributes proved accurate" because "[s]uch a tip . . . does not show that the tipster has knowledge of concealed criminal activity." *Id*. at 271, 272.

More recently, in *United States v. Danhauer*, 229 F.3d 1002 (10th Cir. 2000), we addressed an affidavit similar to the one at issue here. In *Danhauer*, a police officer received information from another officer about a confidential informant's report that Robbi and Dennis Danhauer were cooking methamphetamine in a garage located on their property, and that a person named "Casey" was acting as a lookout in front of their home. *Id*. at 1004. The first officer did not reveal the identity of the confidential informant to the investigating officer. *Id*. The investigating officer independently corroborated that the Danhauers lived at the home identified by the informant, and observed Robbi Danhauer going back and forth between the home and the garage. *Id*. He also learned that both the Danhauers had recent criminal histories involving drugs and outstanding arrest warrants, and that the day before, Robbi Danhauer had tested positive for methamphetamine and opiates in a probation report. *Id*. The investigating officer prepared an affidavit based on this information.

We held that this affidavit was insufficient to establish probable cause because "the affiant neither established the veracity of the informant, nor obtained sufficient independent corroboration of the informant's information." *Id*. at 1006. The affidavit did "not reveal . . . the informant's basis of knowledge or adequately verify the informant's most serious allegation, that the Danhauers were

-10-

manufacturing methamphetamine." *Id*. We held that the police failed to link methamphetamine to the Danhauers' residence. *Id*.

## C. Analysis

In this case, the anonymous caller's identity was unknown, so Agent Magalassi had no information about the veracity or historical reliability of the caller. Thus, as in *Gates* and *White*, the anonymous tip standing alone "provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable." *White*, 496 U.S. at 329 (alterations in original) (quoting *Gates*, 462 U.S. at 227).

"When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Danhauer*, 229 F.3d at 1006. However, corroboration of non-predictive information only cannot be used to confirm the reliability of an anonymous informant for the purpose of establishing even the less demanding standard of reasonable suspicion of criminal activity. *J.L.*, 529 U.S. at 271. Here, as in *J.L.*, none of the caller's information was predictive; that is, the caller did not provide any details regarding the future behavior or actions of Tuter. Thus, "[t]he anonymous call . . . left the police without means to test the informant's knowledge or credibility." *Id.*

The government contends that Agent Magalassi's independent investigation corroborated the information provided by the tipster, citing in particular the fact that Agent Magalassi learned that Tuter had a past criminal history, that his wife's vehicle contained firearms as recently as a year ago, and that Tuter did have a twelve-year old son. As in *Danhauer*, however, Agent Magalassi only corroborated innocent, innocuous information about the Tuter's appearance, residence, cars and child. Almost anyone can describe the residents of, and vehicles at, a particular home without having any special knowledge of what goes on inside the home. *See United States. v. Soto-Cervantes*, 138 F.3d 1319, 1323 (10th Cir. 1998) ("The verification of facts readily observable to anyone on the street, without more, is insufficient to support a reasonable suspicion that criminal conduct is occurring."). As made clear in *J.L.*, an accurate description of a suspect's readily observable location and appearance does not, without more, show that "the tipster has knowledge of concealed criminal activity." 529 U.S. at 272. "Apart from the tip, [Agent Magalassi] had no reason to suspect . . . illegal conduct" and his suspicion that Tuter was making pipe bombs "arose not from [his] own observations but solely from a call made from an unknown location by an unknown caller." *Id.* at 268, 270. The fact that Tuter had a fifteen-year old criminal history or that his wife legally possessed firearms a year ago is

insufficient to corroborate the informant's claim that Tuter was making pipe bombs in his garage. *See Danhauer*, 229 F.3d at 1006.

The government contends that the informant's information was reliable because the WeTIPs intake sheet indicated that the caller's information was firsthand. Courts have recognized that, in some circumstances, firsthand observations from a confidential informant can support a finding of reliability. *See Gates*, 462 U.S. at 234 (the informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles the tip to greater weight than might otherwise be the case"). Here, however, the statement that the caller's information was firsthand is completely unsubstantiated. The caller did not claim to have ever been inside the Tuter's home or garage or to have seen the pipe bombs or firearms. The statement that the caller's information was firsthand was simply a conclusory notation on the intake form, and gave no supporting explanation of the caller's basis of knowledge. Moreover, the caller did not provide the kind of highly specific or personal details from which one could reasonably infer that the caller had firsthand knowledge about the claimed criminal activity. *Cf. United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993) (noting that affidavit may support informant's veracity "through the very specificity and detail with which it relates

the informant's first-hand description of the place to be searched or the items to be seized").

The government also suggests that because the tipster alleged that Tuter was manufacturing explosives in Oklahoma on the eve of the millennium, a relaxed showing of reliability should be permitted because of the risk of imminent danger to the public. The Supreme Court in *J.L.* did state in dicta the possibility of such a relaxed standard in the case of information suggesting imminent mass destruction. The Court explained:

> The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.

*Id*. at 273-74.

The government contends that the caller's report of Tuter "making pipe bombs" presents just such a circumstance. We do not believe, however, that an uncorroborated report of someone "making" a pipe bomb in his or her garage carries with it quite the same sense of urgency and risk of imminent danger as is present in a report that someone is "carrying" a bomb. More importantly, Agent Magalassi said nothing in his supporting affidavit about an exigent or emergency situation or about an increased risk to the public because of the upcoming

-14-

millennium, necessitating either a need to act urgently or a need to relax the usual probable cause standards, and the affidavit contains no information about any intended use of such pipe bombs. *See Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention."), *overruled on other grounds, Gates*, 462 U.S. 213.

We conclude, therefore, that the district court correctly held that the facts set forth in the affidavit fell short of providing probable cause for a search warrant. The minimal corroboration of innocent, readily observable facts was insufficient to establish the veracity or reliability of the caller or to link Tuter with the allegation that he was making pipe bombs in his garage.

## II. LEON GOOD FAITH EXCEPTION

Although the search warrant was not supported by probable cause, we conclude that the evidence seized at Tuter's residence need not be suppressed because of the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that the purpose of the exclusionary rule is to deter police misconduct, *id*. at 916, and that "the suppression of evidence obtained pursuant to a warrant should be ordered . . . only in those unusual cases in which exclusion will further the purposes of the exclusionary rule," *id*. at 918. "Where an officer acting with objective good faith

-15-

obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter." *United States v. Nolan*, 199 F.3d 1180, 1184 (10th Cir. 1999). (citing *Leon*, 468 U.S. at 920-21).

"The Supreme Court recognizes four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued. In these situations, the good-faith exception to the exclusionary rule would not apply." *Danhauer*, 229 F.3d at 1007 (citation omitted).

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth. Second, the exception does not apply when the issuing magistrate wholly abandons [his] judicial role. Third, the good-faith exception does not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*Id*. (citations and quotations omitted).

The district court denied application of the good-faith exception, stating only that Agent Magalassi's affidavit was insufficient to justify the issuance of the warrant. The applicability of *Leon's* good faith exception is a question of law that we review de novo. *United States v. Rowland*, 145 F.3d 1194, 1206 (10th Cir. 1998). Applying that standard, we disagree with the district court's conclusion that the good faith exception does not apply.

-16-

Tuter contends that the first and third exceptions listed above are applicable here to preclude use of the good faith exception. We are satisfied that the first exception is not present here. Under *Franks v. Delaware*, 438 U.S. 154 (1978), if a defendant establishes that a police officer made false statements in an affidavit supporting a search warrant knowingly or with reckless disregard for the truth, and that the false statement was necessary to the finding of probable cause, the evidence seized during the resultant search must be excluded. *Id*. at 155-56. Allegations of negligence or innocent mistake, however, are insufficient. *Id*. at 171. The district court conducted a *Franks* hearing on the veracity of the affidavit here, and listened to the testimony of Agent Magalassi. After reviewing the record, we conclude that the district court did not clearly err in finding that the mistakes in the supporting affidavit were insubstantial and did not contribute to the magistrate judge's finding of probable cause, and that nothing in his testimony would show that Agent Magalassi deliberately lied or recklessly disregarded the truth.

We are also satisfied that the third exception does not preclude application of *Leon*. At the time the underlying affidavit was prepared and the warrant was issued, neither the Supreme Court's *J.L.* decision nor this court's *Danhauer* decision had been issued. Agent Magalassi thus had reason to believe that corroboration of innocent facts, coupled with his investigation leading to

discovery of Tuter's criminal history, would be sufficient to establish probable cause. *See Gates*, 462 U.S. at 244 n.13 ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause" and "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts."). Further, Agent Magalassi testified that he contacted an attorney in the U.S. Attorney's office who told him he had sufficient probable cause. *See* Appellant's App. at 153.

"Just as reviewing courts give 'great deference' to the decisions of judicial officers who make probable-cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant." *United States v. Corral-Corral*, 899 F.2d 927, 939 (10th Cir. 1990).

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination. . . . Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921 (quotations, citations and internal brackets omitted).

We conclude it was not unreasonable for Agent Magalassi and the ATF agents to rely on the magistrate judge's authorization of the warrant. *See United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) (stating that in considering the *Leon* good-faith principles, "it must . . . be remembered that the

knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers"); *see also Leon*, 468 U.S. at 919 ("If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." (quotations omitted)). Although we have determined that the supporting affidavit did not establish probable cause, we cannot say it was so facially insufficient under the state of law at the time he obtained the warrant that Agent Magalassi should have known the search was illegal despite the magistrate's authorization. *See id.* at 922 n.23; *Danhauer*, 229 F.3d at 1007 ("The absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, particularly when the officer takes steps to investigate the informant's allegation."). At the time Agent Magalassi obtained the search warrant, he reasonably believed the fruits of his investigation provided sufficient corroboration of the information provided by the anonymous caller to WeTIP to establish probable cause.

Accordingly, the judgment of the United States District Court for the Northern District of Oklahoma is REVERSED and REMANDED for further proceedings consistent with this opinion.