FILED
United States Court of Appeals
Tenth Circuit

**June 5, 2009**

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff–Appellee,

v.

ENRIQUE QUEZADA-ENRIQUEZ,

     Defendant–Appellant.

No. 07-2205

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-06-2262-JB)**

Submitted on the briefs:[*]

Vicki Mandell-King, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender for the Districts of Colorado and Wyoming, Denver, Colorado, for Defendant–Appellant.

David N. Williams, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with him on the briefs), Office of the United States Attorney District of New Mexico, Albuquerque, New Mexico, for Plaintiff–Appellee.

---

[*] At the parties' request, the case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

**LUCERO**, Circuit Judge.

Enrique Quezada-Enriquez appeals from his conviction of possession of a firearm by an illegal alien, a charge that arose out of the discovery of a pistol and ammunition during a search of his residence. He contests the constitutionality of the warrant authorizing this search. The warrant was supported by a tip from a reliable confidential informant that Quezada-Enriquez kept a firearm, but officers were unable to corroborate any information suggesting Quezada-Enriquez actually possessed a gun. The supporting affidavit did not disclose the basis of the informant's knowledge.

We do not address the thorny issue of whether the search warrant for Quezada-Enriquez's house was supported by probable cause because we conclude that officers executed the search in good faith. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Quezada-Enriquez's conviction.

**I**

Special Agent Frank Ortiz of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") applied for a warrant on September 25, 2006, in the United States District Court for the District of New Mexico to search Quezada-

Enriquez's residence. In support of his application, Agent Ortiz swore an affidavit containing the following facts.

Ortiz received information from a confidential informant who claimed to have seen "Enrique Quesada"[1] with a loaded black nine-millimeter pistol that he kept in his vehicle and in his home. The informant told Ortiz that Quezada-Enriquez was an undocumented immigrant of Mexican nationality; described Quezada-Enriquez's age and physical appearance; identified the make, model, and license plate of his vehicle (a Chevrolet Tahoe); and provided the address of his residence. Ortiz avers that this informant was "a credible and reliable ATF documented confidential informant (CI), who is not working off criminal or other charges and who's [sic] information in the past has led to the seizure of various quantities of illegal narcotic substances, amounts of U.S. currency, firearms and ammunition." No further explanation of the informant's relationship to Quezada-Enriquez is provided in the affidavit.

After receiving this tip, Ortiz and other law enforcement officers surveilled the address provided by the informant. Parked outside the location, they saw a Chevrolet Tahoe matching the description provided. By searching several databases, ATF agents determined that an individual named Enrique Quezada-Enriquez had previously been deported and had no current legal status in the

---

[1] The affidavit uses various spellings and iterations of Quezada-Enriquez's name. For the remainder of this opinion, we adhere to the spelling provided in Quezada-Enriquez's brief.

United States.  A New Mexico Department of Motor Vehicles database identified Enrique Quezada as an alias for an Enrique Quezada-Enriquez with the same date of birth as the individual identified in the immigration database.  Another database inquiry showed that an Enrique Quezada paid utility bills at the address provided by the informant.  Agents showed the informant a picture of Quezada-Enriquez obtained from these record checks, and the informant confirmed that the individual depicted was the one he described in his initial tip.

A United States Magistrate Judge issued the warrant on September 25, and it was executed the following day.  In doing so, agents entered the residence at the noted address and discovered a .45 caliber semi-automatic pistol in the kitchen and matching ammunition in the bedroom.  Quezada-Enriquez was arrested and admitted to agents that he was in the country illegally.  He was later charged with one count of firearm possession by an illegal immigrant in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2).

Quezada-Enriquez moved to suppress all evidence obtained as a result of the search of his home, arguing that the search violated the Fourth Amendment because the warrant was unsupported by probable cause and did not fall under the good faith exception to the exclusionary rule.  After a hearing, the district court denied this motion, and Quezada-Enriquez pleaded guilty to the sole charge against him, pursuant to an agreement that allowed him to "withdraw his guilty

plea" should he prevail on his appeal of the suppression issue.  Fed. R. Crim. P.

11(a)(2).  He now appeals.

## II

We must first determine whether Quezada-Enriquez's challenge to his

conviction is moot in light of his deportation from the United States following

that conviction.  Under Article III of the Constitution, we may hear only cases

involving a live case or controversy, and this requirement adheres at all stages of

judicial proceedings.  United States v. Meyers, 200 F.3d 715, 718 (10th Cir.

2000).  Once it becomes impossible for a court to grant effectual relief, a live

controversy does not exist, and a case is moot.  United States v. Hahn, 359 F.3d

1315, 1323 (10th Cir. 2004) (en banc).

Quezada-Enriquez pleaded guilty on the condition that he could appeal the

denial of suppression and would be allowed to withdraw his plea were the appeal

successful.  Based on this language in the plea agreement, the government asserts

that Quezada-Enriquez would have to return to this country to withdraw his plea

should he prevail on appeal.  But because he is forbidden from reentering the

United States by the immigration laws, see 8 U.S.C. § 1326, the government

concludes that we cannot grant him effectual relief, mooting his appeal.[2]

---

[2] A defendant's challenge to his criminal conviction might also be moot if
the conviction ceased to carry any practical consequences for his liberty.  Yet, we
presume that all criminal convictions carry continuing collateral consequences
such that there is a live case and controversy even after the sentence has been

(continued...)

- 5 -

Although the government contends that Quezada-Enriquez would have to return to the United States to withdraw his plea, the government provides no authority for this proposition. Rule 43 lists a set of proceedings for which "the defendant must be present." Fed. R. Crim. P. 43(a). Although that Rule lists "the plea" as such a proceeding, it does not explicitly require a defendant to be physically present to withdraw a plea, nor have we found any case law suggesting as much. Instead, a defendant typically seeks to withdraw a plea by way of motion. See, e.g., United States v. Garduno, 506 F.3d 1287, 1289 (10th Cir. 2007). Quezada-Enriquez could direct his attorney to file such a motion on his behalf without physically returning to the United States. Moreover, a defendant may waive his right to be present for certain proceedings under Rule 43. See United States v. Edmonson, 962 F.2d 1535, 1544 (10th Cir. 1992) (waiver of right to be present at trial).

---

[2](...continued)
fully served. Spencer v. Kemna, 523 U.S. 1, 8 (1998). The government does not seek to rebut this presumption. Rather, the government argues that the appeal is moot because we are unable to grant relief from these possible consequences.

Although we requested supplemental briefing regarding United States v. Vera-Flores, 496 F.3d 1177 (10th Cir. 2007), we ultimately conclude that it is distinguishable because Quezada-Enriquez challenges his conviction and not merely the length of his sentence. See id. at 1181 n.2 (stressing that Vera-Flores's claim was "a challenge to the length of his sentence rather than to his conviction" and that for a defendant who challenged his conviction "the mootness analysis would likely be different, even in a situation where the defendant has been deported" (citing Spencer, 523 U.S. at 8)). Unlike a conviction, which may continue to impact a defendant's liberty after the corresponding sentence of imprisonment is served, the sentence itself ends upon release and any subsequent challenge to its length is generally futile.

The plea agreement before us provides that Quezada-Enriquez "shall be allowed to withdraw his guilty plea" if he prevails in this appeal. Further, Rule 11(a)(2) states that "[a] defendant who prevails on appeal may then withdraw the [conditional] plea." We are unwilling to contravene the plain text of these provisions given the potential for Quezada-Enriquez to withdraw his plea without being physically present in the United States. Because reversing the conviction could provide Quezada-Enriquez with relief from the collateral consequences of conviction, the underlying controversy remains live.

### III

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and uphold the district court's factual findings unless clearly erroneous. United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000). Because a magistrate's probable cause determination must be supported by facts presented in the affidavit, we limit our review to those facts. Id. at 1006. "Determinations relating to the sufficiency of a search warrant and the applicability of the good-faith exception are conclusions of law, . . . which this court reviews de novo." Id. at 1005. We afford great deference to a magistrate's finding of probable cause, reversing only if the affidavit supporting the warrant provides "no substantial basis for concluding that probable cause existed." Id. at 1006 (quotation omitted).

### A

Because the search warrant in this case relied solely upon (1) an uncorroborated tip from a reliable confidential informant stating that Quezada-Enriquez possessed a firearm combined with (2) police verification of other, publicly available, non-predictive information provided by the informant, Quezada-Enriquez argues that the warrant was not supported by probable cause. The government counters by pointing to the informant's record of providing accurate information to police.

In a seminal case on the use of information from a confidential informant in support of a warrant application, Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court held that veracity, reliability, and basis of knowledge are "highly relevant" as to whether a tip can support probable cause. Id. at 230. Veracity concerns whether there is reason to believe that the informant is telling the truth, see id. at 227; United States v. Tuter, 240 F.3d 1292, 1297 (10th Cir. 2001), including whether he faces criminal charges or whether his statement is against his own penal interest. "[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004). Reliability determinations entail inquiry into whether the informant has provided accurate information in the past. United States v. Corral, 970 F.2d 719, 727 (10th Cir. 1992); see also Gates, 462 U.S. at 243-44. As for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information.

Tuter, 240 F.3d 1297-98. Thus, when the informant's basis of knowledge is not described on the face of the affidavit, we look to whether the information "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Gates, 462 U.S. at 245. We look for "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." Tuter, 240 F.3d at 1298; see also Florida v. J.L., 529 U.S. 266, 271 (2000) (explaining that the provision of accurate "predictive information" can indicate either veracity or basis of knowledge).

As the foregoing authorities demonstrate, "veracity, reliability, and basis of knowledge" are "intertwined." Gates, 462 U.S. at 230. These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist; rather, we evaluate whether these factors as revealed by the facts in the affidavit create "a fair probability that contraband or evidence of a crime will be found in a particular place" on consideration of the totality of circumstances. Id. at 238. Thus, a deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability. Id. at 233; United States v. Traxler, 477 F.3d 1243, 1247 (10th Cir. 2007).

Since Gates, the Court has clarified that even reasonable suspicion—a lesser standard than probable cause—"requires that a tip be reliable in its

assertion of illegality, not just in its tendency to identify a determinate person." J.L., 529 U.S. at 272. Thus, mere corroboration of "innocent, innocuous information" provided in a tip is not sufficient to create the requisite suspicion: "Almost anyone can describe the residents of, and vehicles at, a particular home without having any special knowledge of what goes on inside the home," and thus "an accurate description of a suspect's readily observable location and appearance, without more, does not show that 'the tipster has knowledge of concealed criminal activity.'" Tuter, 240 F.3d at 1297 (quoting J.L., 529 U.S. at 272).

Although our prior cases provide some guidance, they do not completely shape our analysis. This is so because, although not explained in particular detail in the affidavit, this informant apparently had a track record of reliability and some indication of veracity. Ortiz's affidavit stated that his informant was receiving no benefit for providing information and had provided accurate information about criminal activity on past occasions. By contrast, the informant in Tuter was anonymous and untested. 240 F.3d at 1297. In Danhauer, the affidavit indicated nothing about the informant's past reliability. 229 F.3d at 1006. This difference raises the question: Given the absence of any corroboration of detail suggesting Quezada-Enriquez was in possession of a firearm, confirmation of predictive information, or any other disclosed basis of the informant's knowledge, does probable cause exist?

Courts in other circuits have struggled with the same probable cause dilemma under similar circumstances. In United States v. Carpenter, 341 F.3d 666 (8th Cir. 2003), the Eighth Circuit held that a warrant based on uncorroborated information from an informant who had proven reliable in the past had shortcomings which "may demonstrate an absence of probable cause," including the officer's "failure to set forth a more detailed factual basis for the [informant's] statement," but nevertheless affirmed suppression based on the good faith exception. Id. at 670-71. Similarly, in United States v. Garcia, 528 F.3d 481 (7th Cir. 2008), the Seventh Circuit "hesitate[d]" to uphold a finding of probable cause when the supporting affidavit specified that the informant had provided information leading to at least three past arrests and had observed drugs in the search location firsthand, but "the affidavit lack[ed] much detail from the informant." Id. at 486.

As the foregoing discussion demonstrates, the present case differs from our probable cause precedent. Although the affidavit before us does not describe the basis of the informant's knowledge and police did not corroborate any details suggesting a gun would be found in the premises to be searched, the affidavit does note that the informant had provided accurate information in the past and was "not working off criminal or other charges." But, as described below, there is enough in the affidavit to cause us to readily conclude that the officers who executed the warrant acted in good faith. Because the good faith exception

applies and requires affirmance, it is not necessary for us to decide if the warrant was supported by probable cause. See Danhauer, 229 F.3d at 1005 ("[We] have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question."); United States v. Bishop, 890 F.2d 212, 216 (10th Cir. 1989) (declining to decide probable cause issue and affirming based on good faith).

**B**

We will not reverse the district court's decision to deny suppression of the evidence obtained during a search if the officers who executed the warrant relied upon it in good faith. United States v. Leon, 468 U.S. 897, 920-22 (1984). "In this circuit, we have concluded that Leon's good faith exception applies only narrowly, and ordinarily only when an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer." United States v. Perrine, 518 F.3d 1196, 1206 (10th Cir. 2008) (quotation omitted). The exception may not be invoked when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (quotation omitted).

Given the important differences between the affidavit under consideration and those in J.L., Danhauer, and Tuter, it would not have been "entirely unreasonable" for Agent Ortiz to rely on the affidavit. And our review of the record demonstrates that the officers who executed the warrant did so believing

that it was properly issued.  There is nothing in our review that raises any suggestion other than that the warrant was executed in good faith.  That being the case, the <u>Leon</u> good-faith exception to the exclusionary rule applies.  We conclude that the district court did not err in denying suppression, making it unnecessary for us to reach the existence of probable cause.

## IV

**AFFIRMED**.