**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORGE ERALDO AISPURO-
ARISTEGUI,

Defendant - Appellant.

No. 11-2017

(D. New Mexico)

(D.C. No. 1:10-CR-01006-JEC-2)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ** and **HOLMES**, Circuit Judges, and **EAGAN**,[**] District Judge.

---

Defendant Jorge Eraldo Aispuro-Aristegui pleaded guilty in the United

States District Court for the District of New Mexico to possession of heroin with

intent to distribute and conspiracy to commit the offense. *See* 21 U.S.C.

§§ 841(b)(1)(B), 846. His plea reserved his right to appeal the district court's

denial of his motion to suppress. Defendant filed a timely appeal and argues that

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]Honorable Claire V. Eagan, Chief Judge, United States District Court,
Northern District of Oklahoma, sitting by designation.

there was not probable cause for his arrest.  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

## I.   BACKGROUND

We recite the "evidence in the light most favorable to the district court's

ruling."  *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205 (10th Cir. 2007).

On March 22, 2010, Agent Jarrell Perry[1] of the Drug Enforcement Administration

(DEA) was at the Albuquerque bus station watching passengers exit a bus en

route from El Paso to Denver.  He saw a man, later identified as Oscar Raul

Villanueva, walk through the bus station carrying only a small black satchel and

not stopping to get checked luggage.  Mr. Villanueva's shoes had a bulge at the

top, which led Agent Perry to believe that the shoes may contain illegal drugs.

He caught up to Mr. Villanueva, showed his badge, and requested permission to

ask some questions.  After a brief conversation in Spanish, Mr. Villanueva

consented to a search of his shoes.  Agent Perry discovered what appeared to be a

tape-wrapped bundle of about a kilogram of heroin.  He knew that a kilogram of

pure heroin could sell for more than $50,000, and as much as triple that if diluted

with additives.  Based on his training and experience, including experience at the

---

[1]Although we must view Agent Perry's testimony at the suppression
hearing in the light most favorable to the government (indeed, the district court
explicitly found that his testimony was credible), we have previously raised
serious questions about his veracity. *See United States v. Rangel*, 519 F.3d 1258
(10th Cir. 2008).  It was disappointing to read in the record of this case that over
two years later the matter was still under investigation.

same bus station with passengers who had concealed heroin in their shoes, he concluded that the bundle was "definitely a distributable amount" that was to be delivered to another person. R., Vol. 3 at 18. As Agent Perry reached for his handcuffs, Mr. Villanueva attempted to run, but he was quickly caught and restrained.

An off-duty Sandoval County sheriff's sergeant, Rudy Villarreal, identified himself and offered to assist. He read Mr. Villanueva his *Miranda* rights in Spanish, and Mr. Villanueva agreed to cooperate. Mr. Villanueva told the officers that he would receive a direct-connect phone call from the person who was supposed to pick him up, that he was to deliver the shoes (which he knew contained drugs) to that person, that he would receive $1,000 for doing so, and that he would then promptly leave town. He did not, however, provide a description, name, or address of the person who was to pick him up.

After making these statements, Mr. Villanueva showed Agent Perry a black cell phone that he was carrying. Agent Perry saw that there had been a recently missed direct-connect phone call, and Mr. Villanueva confirmed that it was from the number of the person who was supposed to pick him up. Mr. Villanueva agreed to call the number and let the person know that he was at the bus station waiting to be picked up. By this time, another DEA agent, Kevin Small, had arrived on the scene. Mr. Villanueva made the call and told the agents that the person on the other end of the line had said that he would be coming in a few

minutes, but Mr. Villanueva did not describe what the person's vehicle would look like. Mr. Villanueva was told to approach the vehicle but not enter it.

Within a few minutes a Chevy Malibu drove up and parked directly behind Agent Small's vehicle near the bus station. It was the only vehicle that had arrived, and Mr. Villanueva was the only passenger standing outside the bus station. Agent Small observed Defendant make a gesture in Mr. Villanueva's direction, and Mr. Villanueva indicated to Sergeant Villarreal that the driver was the person who was going to pick him up. Mr. Villanueva, whose handcuffs were hidden by a jacket, approached the vehicle and spoke with the driver (Defendant) through the passenger-side window. Agent Perry could not hear what was said but observed Mr. Villanueva turn and look at Sergeant Villarreal and then glance toward where he was standing inside the bus station. Next Mr. Villanueva opened the passenger-side door and began to sit in the Malibu, whose engine was still running. Agents Perry and Small immediately approached the driver's side of the Malibu with their guns drawn, removed Defendant from the vehicle, and arrested him. Defendant made no attempt to flee. Agents Perry and Small drove Mr. Villanueva and Defendant to the DEA office in Albuquerque, where Defendant waived his *Miranda* rights and answered some questions.

After Defendant was indicted, he moved to suppress all evidence seized and statements made as a result of his arrest. The motion was denied, and he entered into a plea agreement permitting him to appeal the denial of the suppression

motion.  He now appeals, contending that his arrest was not supported by probable cause.

## II.   DISCUSSION

Defendant argues that his arrest violated the Fourth Amendment, and therefore his postarrest statements must be suppressed as fruit of the poisonous tree.  *See Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).  Because we hold that Defendant's arrest was lawful, we need not address whether his postarrest statements were fruit of the arrest.

In reviewing the denial of Defendant's motion to suppress, "we . . . accept the district court's factual findings unless clearly erroneous" and "apply *de novo* review to the district court's determination of reasonableness under the Fourth Amendment."  *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009).  The Constitution requires that arrests by law enforcement officers be supported by probable cause.  *See* U.S. Const. amend. IV; *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).  "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (en banc) (internal quotation marks omitted).

Defendant does not challenge the district court's factual findings. Rather, he argues that there was no probable cause because the agents (1) knew only that Defendant came to the bus station to give Mr. Villanueva a ride—a completely innocent and legal activity, and (2) had no reason to trust Mr. Villanueva and therefore had no reliable information linking him with Defendant in illicit activity. We are not persuaded.

The central issue is whether the officers could reasonably believe Mr. Villanueva's statement that he was to be paid for delivering his shoes to the person picking him up. If that statement was true, then the Malibu driver was not merely one who happened to have associated with a criminal. *See United States v. Hansen*, 652 F.2d 1374, 1388 (10th Cir. 1981) ("[A]ssociation with known or suspected criminals is not enough in itself to establish probable cause.").

To be sure, the officers had no knowledge whether Mr. Villanueva was ordinarily a trustworthy source of information. But this was no mere bald accusation that the Malibu driver was a drug dealer. Mr. Villanueva's account was in large part corroborated. *See United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." (brackets and internal quotation marks omitted)). He was transporting a very valuable quantity of heroin in his shoes. His lack of luggage suggested a brief visit. His description of how he would be met was confirmed by

Agent Perry's observation of a missed direct-connect call on Mr. Villanueva's phone and the arrival of the Malibu in response to Mr. Villanueva's call to that number. And the scenario described by Mr. Villanueva was fully consistent with Agent Perry's training and experience with similar individuals found carrying drugs in their shoes at that bus depot. *See Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists."); *United States v. Wicks*, 995 F.2d 964, 972–73 (10th Cir. 1993) (similar). Indeed, the circumstances may have sufficed to establish probable cause to believe that the Malibu driver was Mr. Villanueva's partner in crime even without considering Mr. Villanueva's statements. Thus, the arresting officers could reasonably rely on Mr. Villanueva's statements.

"Although [Defendant's] actions could theoretically have been innocent, we believe a prudent, cautious and trained police officer more likely would have construed those actions as indicating [that Defendant] was [involved in the crime]." *United States v. Sparks*, 291 F.3d 683, 688 (10th Cir. 2002); *see United States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002) ("In drug investigations, the court may consider the experience and expertise of the officers involved. This experience and expertise may lead a trained narcotics officer to perceive meaning from conduct which would otherwise seem innocent to the

untrained observer." (internal quotation marks omitted)).  Taken as a whole, the

information available to the agents gave them probable cause to arrest Defendant.

## III.   CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge