**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RECO D. MANNING,

    Defendant - Appellant.

No. 14-5078
(D.C. No. 4:13-CR-00206-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.
_____

A jury convicted Reco Manning of being a felon in possession of a firearm and ammunition, and possessing methamphetamine and heroin with intent to distribute. He appeals the denial of his motion to suppress and several sentencing issues. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In May 2013, a confidential informant told Tulsa Police Officer Tom Wilson that a person named Reco was selling drugs from a house in Tulsa. The informant

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

took Wilson to the house. Wilson confirmed through a Tulsa Police records database that Manning had listed the address as his residence, although the property was actually owned by his aunt. Wilson also learned that Manning had two prior drug-related arrests, and one felony conviction for narcotics possession.

The informant positively identified a photo of Manning as the man who sold drugs at the house, stated that he or she had seen drugs packaged for sale inside the residence within the past 72 hours, and told Wilson that Manning sells drugs when people gather outside the house. Wilson conducted surveillance at the home several times, and observed a group of people gathering outside. He submitted an application for a warrant to search the house, including the following statements about the confidential informant in his affidavit:

> The [Reliable Confidential Informant ("R.C.I.")] has in the past given information to your affiant in excess of three occasions. The Tulsa Police Department began utilizing this R.C.I. in 2005. The R.C.I. has been able to make controlled dangerous substance purchases, further investigations, and enable officers to obtain narcotic search warrants. The R.C.I. has assisted in investigations leading to seizures of cocaine and marijuana. Your affiant further states that since 2005, subjects arrested subsequent to information received from this R.C.I. have been successfully charged with narcotic violations. Your affiant further states that your affiant has never found the information that the R.C.I. has given your affiant to be untrue or misleading. Your affiant states that while conducting investigations with this R.C.I. their [sic] reliability has been consistently verified throughout the investigations he/she assisted your affiant with. The information that the R.C.I. has provided in the past has been up to date and vital on multiple narcotics investigations. Your affiant states that the last investigation this R.C.I. assisted your affiant with led to a search warrant being served on a suspect's residence and charges being filed.

A state court judge issued the warrant. Tulsa police officers executed it the next day. Inside the house, they discovered a .38 handgun, ammunition, heroin, methamphetamine, and other materials related to the drug trade. Both the heroin and methamphetamine were found inside shoes located in the closet of the room in which Manning was staying. After being informed of his right to remain silent, Manning led an officer to the handgun, which was located in the pocket of a coat hung in an entryway closet.

Manning was charged with one count of being a felon in possession of a firearm and ammunition, one count of possession of heroin with intent to distribute, and one count of possession of methamphetamine with intent to distribute. He moved to suppress the fruits of the search, arguing that the warrant affidavit contained inadequate information about the credibility of the confidential informant. The district court denied the motion, concluding that Wilson's affidavit established probable cause, and, alternatively, that the officers conducted the search in good faith reliance on the warrant. A jury found Manning guilty on all three counts.

Manning's Presentence Investigation Report ("PSR") recommended that he be sentenced as a career offender pursuant to U.S.S.G. § 4B1.1(b). His career offender status was based on state court convictions in Arkansas for possession of cocaine and Xanax with intent to deliver, and for battery. Manning's Guidelines range was 210-240 months. The district court varied downward to 112 months. Manning timely appealed.

-3-

## II

We review a district court's ruling on the validity of a warrant de novo. <u>See</u> <u>United States v. Pulliam</u>, 748 F.3d 967, 970-71 (10th Cir. 2014). In doing so, we "must accord great deference to the probable-cause assessment of the state court judge who issued the warrant." <u>Id.</u> at 971 (quotation omitted). Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." <u>United States v. Tuter</u>, 240 F.3d 1292, 1295 (10th Cir. 2001) (quotation omitted).

Warrants that rely on evidence provided by confidential informants are generally viewed with "skepticism and careful scrutiny." <u>Easton v. City of Boulder</u>, 776 F.2d 1441, 1449 (10th Cir. 1985). Because many confidential informants "suffer from generally unsavory character and may only be assisting police to avoid prosecution for their own crimes," courts must consider the informant's "veracity," "reliability," and "basis of knowledge." <u>United States v. Avery</u>, 295 F.3d 1158, 1168 (10th Cir. 2002) (quotations omitted). "These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist; . . . a deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability." <u>United States v. Quezada-Enriquez</u>, 567 F.3d 1228, 1233 (10th Cir. 2009).

Manning correctly argues that the affidavit supporting the warrant offered little evidence of the confidential informant's veracity. "Veracity concerns whether there is reason to believe that the informant is telling the truth." <u>Id.</u> Police knew the

-4-

identity of the confidential informant, which is "one indicator of veracity."  Cf.

Pulliam, 748 F.3d at 971 & n.2.[1]  However, there is no information in the record

about whether the confidential informant was making statements against interest or

facing criminal charges.  Cf. United States v. Sturmoski, 971 F.2d 452, 457 (10th Cir.

1992).  Corroboration of non-innocuous information can obviate the need to establish

veracity.  See Tuter, 240 F.3d at 1297.  Most of the corroborating information cited

by the government was wholly innocent, for example, the fact that Manning lived at

the residence identified by the confidential informant.  See id. ("Almost anyone can

describe the residents of . . . a particular home without having any special knowledge

of what goes on inside the home.").  But police were able to independently learn that

Manning had a prior felony conviction for drug possession, which bears on the

probable cause calculus.  See United States v. Artez, 389 F.3d 1106, 1114 (10th Cir.

2004) ("Criminal history alone is not enough to support a finding even of reasonable

suspicion, much less probable cause, [but] . . . criminal history, combined with other

factors, can support a finding of reasonable suspicion or probable cause.").

Manning also challenges the reliability of the informant.  "Reliability

determinations entail inquiry into whether the informant has provided accurate

information in the past."  Quezada-Enriquez, 567 F.3d at 1233.  In his affidavit,

Officer Wilson explained that the confidential informant had worked with Tulsa

---

[1] This fact distinguishes the case at bar from Tuter, in which we held that a warrant lacked probable cause in part because the "anonymous caller's identity was unknown," and police thus had "no information about the veracity or historical reliability of the caller."  240 F.3d at 1297.

Police since 2005, had provided information "in excess of three occasions," and that this assistance led to the issuance of search warrants, seizures of cocaine and marijuana, and resulted in arrests and charges. Wilson further attested that the informant had never given "untrue or misleading" information, and that police have been able to verify the informant's tips in "multiple narcotics investigations." In United States v. Long, 774 F.3d 653 (10th Cir. 2014), we held that information supplied by a confidential informant with a similar history of providing information was reliable. Id. at 657-60. Manning notes that unlike in Long, the record in the case at bar is silent as to whether the confidential informant provided recent tips and whether any of the charges resulting from his or her information led to convictions. Nonetheless, the warrant affidavit provides some evidence that the confidential informant was reliable. See, e.g., Pulliam, 748 F.3d at 971 (concluding that warrant was supported by probable cause when an informant's "tips had reliably led police to contraband in the past").

"As for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information." Quezada-Enriquez, 567 F.3d at 1233. The confidential informant's basis of knowledge was his or her firsthand observation of drugs packaged for sale inside of Manning's residence.[2] Manning argues that the affidavit provides few specific details about the house or the packaging. We afford

---

[2] This fact distinguishes the case from United States v. Danhauer, 229 F.3d 1002 (10th Cir. 2000), in which we concluded that an affidavit was insufficient because it did not identify the basis of the confidential informant's knowledge or include any information about his or her reliability. Id. at 1006.

greater weight to "highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." Tuter, 240 F.3d at 1298. But such detailed information is more important "when the informant's basis of knowledge is not described on the face of the affidavit." Quezada-Enriquez, 567 F.3d at 1233. The affidavit in this case stated that the confidential informant saw the drugs with his or her own eyes.

Even if we were to conclude that the affidavit did not establish probable cause, we conclude that Manning is not entitled to suppression because the fruits of a search will not be suppressed if officers acted with an objectively reasonable good-faith belief that a warrant was properly issued. United States v. Leon, 468 U.S. 897, 922 (1984). Manning contends that this warrant is subject to an exception to the good-faith doctrine because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923 (quotation omitted). But this is a narrow exception that typically only applies when an officer submits a "bare bones affidavit, containing only conclusory statements and completely devoid of factual support." United States v. Rowland, 145 F.3d 1194, 1207 (10th Cir. 1998).

The affidavit at issue is not conclusory. It contains significant factual support about the confidential informant, Manning's criminal history, and observations made by the officer. Although the affidavit could have contained more evidence about the informant's veracity, more specifics about the informant's reliability, and further details about the informant's knowledge, any shortfalls as to these factors did not

render the officers' reliance on the warrant objectively unreasonable. See Quezada-Enriquez, 567 F.3d at 1234 (applying good-faith exception even though "the affidavit before us does not describe the basis of the informant's knowledge and police did not corroborate any details"); Danhauer, 229 F.3d at 1007 ("[T]he absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, particularly when the officer takes steps to investigate the informant's allegation." (citation omitted)).

## III

After briefs in this case were submitted, we granted Manning leave to file a pro se supplemental brief challenging aspects of his sentencing. Liberally construing Manning's pro se filing, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), his argument is that his sentence is procedurally unreasonable because the district court erred in applying various Guidelines provisions. "In examining a sentence for procedural reasonableness, we review the district court's legal conclusions de novo and its factual findings for clear error." United States v. White, 782 F.3d 1118, 1129 (10th Cir. 2015) (quotation omitted).

## A

Manning contends that the district court erroneously concluded that U.S.S.G. § 2K2.1(b)(6)(B) applied because he "possessed any firearm or ammunition in connection with another felony offense." This enhancement should be imposed if "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug

paraphernalia." § 2K2.1 app. n.14(B). We have held that if an "entire house was used for drug trafficking activities," a gun located anywhere in the house presumptively qualifies as "possessed . . . in connection with the offense." United States v. Dickerson, 195 F.3d 1183, 1188 (10th Cir. 1999). Because drugs and drug paraphernalia were found throughout the house, the district court did not err by imposing the § 2K2.1(b)(6)(B) enhancement.

**B**

Relatedly, Manning claims that the district court erred by imposing a two-level enhancement pursuant to § 2D1.1(b)(1) on the basis that he possessed a firearm during the drug offenses.[3] This enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." See § 2D1.1 app. n.11(A). The government satisfied its burden of proving that the firearm in the front closet was connected to the drug offenses, and Manning did not show a clear improbability that the gun was connected to those offenses. See United States v. Pompey, 264 F.3d 1176, 1180-81 (10th Cir. 2001).

**C**

Manning further argues that the district court erred by sentencing him as a career offender pursuant to § 4B1.1 because his predicate offenses were consolidated for sentencing purposes. Regardless of consolidation, however, "[p]rior sentences are always counted separately if the sentences were imposed for offenses that were separated

---

[3] The PSR mistakenly cited a nonexistent provision, § 2K1.1(b)(1), but clarified in response to Manning's objection that the enhancement falls under § 2D1.1.

by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." § 4A1.2(a)(2). Because an intervening arrest separated Manning's predicate offenses, they were properly counted separately.

**D**

Finally, Manning contends that the district court erred in sentencing him as a career offender because his Arkansas second-degree battery conviction does not qualify as a "crime of violence" under § 4B1.1(a). Because Manning did not raise this argument before the district court, we review for plain error. United States v. Sierra-Castillo, 405 F.3d 932, 941 (10th Cir. 2005). Plain error exists when: "(1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 941-42.

A "crime of violence" is defined as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a). To ascertain if a crime falls under this definition, we look only to the elements of the predicate offenses, "and not to the particular facts underlying those convictions." Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (quotation and emphasis omitted). For statutes that list "multiple, alternative elements, and so effectively create[] several different crimes," we apply the modified categorical approach. Id. at 2285 (quotation and alteration omitted). Under this approach, courts may review a "restricted set of materials" to "determine which crime formed the basis of the defendant's conviction." Id. at 2284. Although there is

-10-

no "exhaustive list of which documents can be examined under the modified categorical approach," the Supreme Court has identified "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms" as permissible. United States v. Trent, 767 F.3d 1046, 1052 (10th Cir. 2014) (quotations omitted).

As Manning correctly explains, the Eighth Circuit has held that a conviction for second-degree battery in Arkansas statute does not qualify as a crime of violence under the categorical approach when the subsection of the statute under which the defendant was convicted is not specified. See United States v. Boose, 739 F.3d 1185, 1187 (8th Cir. 2014) (discussing United States v. Dawn, 685 F.3d 790, 795 (8th Cir. 2012)). It reached this conclusion because one of the statute's subsections covers reckless driving offenses, which are not considered crimes of violence. Id. (discussing Ark. Code § 5-13-202(a)(3)).

The PSR indicates that Manning was convicted of battery for "intentionally and knowingly caus[ing] physical injury to [a victim] whom he knew to be age 60 or older." This description matches a subsection of the Arkansas statute, which provides that "[a] person commits battery in the second degree if . . . [t]he person knowingly . . . causes physical injury to . . . a person he or she knows to be . . . [a]n individual sixty (60) years of age or older." Ark. Code § 5-13-202(a)(4)(C). The record thus indicates that Manning was not convicted under the reckless driving subsection identified by the Eighth Circuit as problematic. See Boose, 739 F.3d at

-11-

1187.  And subsection (a)(4)(C) "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a).

It is possible that the PSR relied on documents that may not be properly considered under the modified categorical approach.  But because we proceed on plain error review, Manning is not entitled to relief.  Manning would have been "disadvantaged by the district court's ruling only if the government were unable to prove, by appropriate judicial documents, that his prior conviction was for" a violation of subsection (a)(4)(C).  United States v. Zubia-Torres, 550 F.3d 1202, 1210 (10th Cir. 2008).  But because he "fail[ed] to object to application of the sentencing enhancement, or even to present evidence on appeal indicating that imposition of the enhancement was erroneous, we have no basis on which to determine" that error occurred.  Id.  Manning "has therefore failed to meet his burden to show that the court's approach prejudiced his substantial rights."  Id.  Accordingly, the district court did not plainly err by concluding that Manning's Arkansas second-degree battery conviction qualifies as a crime of violence.

## IV

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-12-