**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

JOSE HERRERA,

      Defendant-Appellee.

No. 13-1527

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:12-CR-00392-MSK-1)**

---

Robert Mark Russel, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Lisa Fine Moses of Knight & Moses, LLC, Littleton, Colorado, for Defendant-Appellee.

---

Before **GORSUCH**, **SENTELLE**,[*] and **MURPHY**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

[*] The Honorable David B. Sentelle, Senior Circuit Judge, United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

The government wanted a warrant to attach a GPS tracking device to Jose Herrera's car. An undercover officer, Shannon Daly, attested in her warrant application that she and a confidential informant repeatedly purchased methamphetamine from Mr. Herrera; that Mr. Herrera recently told them he was about to take a trip and wouldn't be available to sell them more drugs for a little while; and that he was busy at the moment collecting money from drug dealers in his debt. The officer added that, in her experience and the informant's, these facts collectively suggested Mr. Herrera was gathering funds for an imminent meeting with an out-of-town supplier to restock his inventory. A magistrate agreed and approved the warrant. And soon enough the tracking device seemed to confirm everyone's suspicions: the next day it showed Mr. Herrera driving to Los Angeles before then quickly turning for home in Colorado. When officers pulled the car over they discovered drugs in a hidden compartment and made their arrest.

All the same, the charges soon landed in jeopardy when the district court held that the warrant had been unlawfully issued and much of the evidence against Mr. Herrera had to be suppressed. The government appeals this ruling, arguing it is wrong for two reasons. We find the first of these reasons unpersuasive but hold the second requires reversal.

The government's first argument attacks less the substance of the district court's ruling than the process it used to get there. Before the district court, Mr. Herrera argued that the government's conduct ran afoul of *Franks v. Delaware*,

438 U.S. 154 (1978). Under *Franks*, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued. *See id.* at 155-56; *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). To win an evidentiary hearing to prove a *Franks* violation, a defendant must do more than allege a problem with the warrant. The Supreme Court has directed that a defendant's allegations "must be accompanied by an offer of proof. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171; *see also Kennedy*, 131 F.3d at 1376. In this appeal the government opens by suggesting that the district court committed reversible error when it afforded Mr. Herrera a *Franks* hearing without first demanding that kind of showing from him.

It seems to us the government's argument mistakes *Franks* to prohibit what it doesn't require. Of course, a defendant has no right to an evidentiary hearing unless he first makes the showing the Supreme Court has prescribed. But from that it doesn't follow that a district court errs when it grants a hearing without such a showing. After all, lots of things in the law, as in life, aren't mandatory but still permissible. A criminal defendant isn't constitutionally required to testify but he is allowed to do so. He isn't constitutionally compelled to file a motion to dismiss but surely he may. And *Franks* speaks only of the showing a

defendant must make to "mandate" an evidentiary hearing. 438 U.S. at 171.

Nothing in the opinion or the logic on which it rests suggests a district court must

forswear an evidentiary hearing unless the defendant's motion makes one

constitutionally compulsory. Neither does the government cite any other potential

source of authority for such a rule.

To the contrary, district courts generally enjoy a fair amount of discretion

in choosing the procedures they find most helpful for resolving pretrial motions,

including whether to take the matter on the briefs, hear oral argument, or hold an

evidentiary hearing. And often enough courts will choose to err on the side of

granting more process than might be strictly necessary in order to ensure not only

that justice is done but that justice is seen to be done. Whether because of

intuition born of experience that a meritorious issue may lurk in an imperfectly

drawn application, or simply out of a jealous wish to guard individual rights

against governmental intrusions, judges sometimes allow a claimant a fuller

hearing than the law demands. In a democratic legal order built on the promise of

due process and the vindication of individual rights that's often thought laudable

or at least generally permissible — and in any event not the stuff of automatic

reversal. So, as we've explained in another context, where an evidentiary hearing

isn't mandatory it's usually discretionary and the decision to grant one is subject

to review only for abuse of discretion. *See Denver v. Kan. State Penitentiary*, 36

F.3d 1531, 1535 (10th Cir. 1994). The government gives us no reason to think

any more grudging a standard should apply here. Neither does it even attempt to suggest how the district court might have abused its discretion when granting a hearing in this case.

Turning, then, from process to substance the government argues that the district court erred in applying both aspects of the *Franks* test. At *Franks*'s first step, the district court found that Officer Daly's affidavit recklessly created the false impression that the confidential informant knew Mr. Herrera used his black Ford Escape for drug smuggling as far back as 2009 when, in fact, the court found Mr. Herrera didn't buy the Escape until 2011. The district court also suggested that the informant lacked any more recent knowledge of the Escape and its use in drug smuggling.

The trouble is, the affidavit doesn't anywhere state that the informant's experience with the vehicle dated to 2009 and we cannot see how it creates that impression either. Instead, the affidavit merely says that the confidential informant knew from "past experience" that Mr. Herrera owned a black Ford Escape and that he used it for his drug resupply runs. And the attesting officer appeared to have solid grounds for believing the informant knew both these things at the time of the warrant application in August 2012. By that point, the officer and informant had been interacting with Mr. Herrera for several months. No one disputes the informant told officers that Mr. Herrera owned a black Ford Escape during this period or that Mr. Herrera did indeed own such a vehicle throughout

2012. Early in the investigation, the informant told an officer that he had just visited the home of Mr. Herrera's boss where he saw Mr. Herrera and a black Ford Escape. The informant added that he believed Mr. Herrera was about to transport drugs from the house and would do so in the Escape. Months later, an officer corroborated this information in part when he saw the Escape parked at that same house. The confidential informant told officers, too, that during the course of the investigation in 2012 he had been in the Ford Escape and even heard about a false compartment in the vehicle used for hiding drugs, which he attempted to discover. So by the time the attesting officer filed her warrant application in August 2012, she had ample reason to believe that the informant indeed had "past experience," built over the last several months, suggesting both the car's ownership by Mr. Herrera and its use in drug smuggling. We are well aware that to reverse a district court's factual finding requires clear error, a high hurdle requiring us to possess "a definite and firm conviction that a mistake has been committed." *United States v. Lewis*, 594 F.3d 1270, 1289 (10th Cir. 2010). But we simply fail to see any basis in this record for the district court's finding that the attesting officer recklessly created the false impression that the informant knew of the car and its use in drug smuggling as far back as 2009, or that the informant lacked any more recent experience with the Escape.

The second part of the district court's *Franks* analysis proves problematic too. Here, a court must strike any intentional, knowing, or reckless misstatements

in the warrant application affidavit and assess the affidavit without them. 438 U.S. at 155-56. If instead the affidavit contains intentional, knowing, or reckless omissions, a court must add in the omitted facts and assess the affidavit in that light. *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990). To be sure, acts and omissions are often but two sides of the same coin and the one can be (re)cast as the other. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 374 (5th ed. 1984). But whether we're talking about acts or omissions the judge's job is much the same — we must ask whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts. If so, the contested misstatement or omission can be dismissed as immaterial. If not, a Fourth Amendment violation has occurred and the question turns to remedy.

The district court did not follow this order of operations. It didn't ask whether an affidavit corrected for the putatively reckless mistaken impressions it identified would still contain probable cause to support a search warrant. Instead, the district court proceeded to disregard virtually everything the confidential informant said that was included in the warrant application and analyzed the probable cause question in that light. The district court's chosen course seems to rest on the implicit premise that once any statement of a speaker is found to be false then all of the speaker's other statements must be disregarded. Sometimes, of course, that is a fair conclusion. Sometimes someone's tall tale is just so

incredible that it makes you disbelieve anything else that follows from his mouth. But often people prove reliable truth tellers in some areas even when they are not in others. And in this case we have little reason to think the confidential informant falls into the first category rather than the second. Indeed, the district court itself never issued a factual finding that the confidential informant was generally untrustworthy — let alone a factual finding that the attesting officer was recklessly indifferent to that possibility.

Neither could the district court have sustainably done so on this record. To be sure, the record shows that the informant in this case (as in so many cases) was an "unsavory character." *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002). But the record also shows that the informant had proven himself a highly knowledgeable source about Mr. Herrera's drug enterprise. He introduced law enforcement to Mr. Herrera. He made controlled purchases under the supervision of law enforcement agents. An undercover officer corroborated the informant's statements through her own interactions with Mr. Herrera. All this occurred over a period of several months. No one disputes that the informant was correct that Mr. Herrera owned a black Ford Escape throughout the relevant time period in 2012, or that the informant heard it contained a secret compartment for drug trafficking. In these circumstances, we just don't see any sustainable way the court could have disregarded all of the confidential informant's evidence. *See id.* (rejecting claim that an informant was generally untrustworthy when, despite his

"unsavory character," he "had provided reliable information on ten separate occasions").

A *Franks* hearing sometimes may be a matter of grace rather than right. But whether the hearing is mandated or permissive, the district court must apply the same substantive legal standards. In this case, the district court misapplied both portions of the *Franks* test so its order suppressing evidence must be and is reversed. The case is remanded for further proceedings consistent with this opinion.