FILED
United States Court of Appeals
Tenth Circuit

**January 5, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

COREY SHAMON MCKINNEY, a/k/a
Corey Shannon McKinney,

　　Defendant - Appellant.

No. 21-5074
(D.C. No. 4:20-CR-00019-CVE-1)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MORITZ, SEYMOUR,** and **EBEL,** Circuit Judges.

---

Defendant Corey Shamon McKinney was charged with federal firearm and drug

offenses.  He moved to suppress evidence recovered during two searches at his residence.

The related search warrants were supported by officer affidavits that included

information obtained from a reliable confidential informant ("RCI").  After the district

court denied his motion to suppress, he was convicted and sentenced to one hundred

thirty-seven months in prison.  On appeal, defendant asserts a claim under *Franks v.*

*Delaware*, 438 U.S. 154 (1978), contending that the affidavits are contradicted by the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

officer's testimony at trial and that the evidence recovered from the searches should be suppressed.  For the reasons set forth below, we affirm.

## Background

In November of 2019, Officer Mike Cawiezell of the Tulsa Police Department ("TPD") filed an affidavit seeking a search warrant for defendant's residence in Tulsa, Oklahoma based on information he received from an RCI.  A warrant was issued by a Tulsa County judge and executed on November 24, 2019.  During the search, law enforcement recovered methamphetamine, marijuana, heroin, two firearms, ammunition, and body armor from the residence.  They also recovered almost six thousand dollars from defendant's person.  He was arrested but later released on bond.

Following a search of a trash container located in front of defendant's home, Officer Cawiezell sought a second warrant to search the residence.  Another warrant was issued by a Tulsa County judge and a second search was conducted on January 9, 2020.  During this search, law enforcement recovered what appeared to be a firearm silencer and marijuana.

Defendant was indicted in federal court on eight counts, including charges for being a felon in possession; possessing an unregistered silencer; possessing heroin, methamphetamine, and marijuana with intent to distribute; maintaining a drug-involved premises; and possessing a firearm in furtherance of drug trafficking crimes.  He sought to suppress the evidence obtained from both searches, challenging the reliability of the RCI.  Without holding an evidentiary hearing, the district court found that Officer Cawiezell's affidavits established probable cause and denied defendant's motion to

suppress. He opted to go to trial, and the jury found him guilty on all eight counts. He was sentenced to a total of one hundred thirty-seven months in prison followed by three years of supervised release.

### Search Warrant Affidavits

Officer Cawiezell prepared sworn affidavits in support of both search warrants. The first affidavit stated that Officer Cawiezell was contacted by the RCI concerning an individual, later identified as defendant, who was "selling a large amount of methamphetamine and possessing firearms in the Tulsa County area." Rec., vol. I at 156. Officer Cawiezell stated that the RCI "informed [him] that Corey McKinney was in possession of methamphetamine, heroin, and a firearm" at his residence. *Id.* at 157. He also stated that the RCI "informed [him] that Corey McKinney had recently within the past 72 hours acquired a large amount of methamphetamine, and that it was currently being stored at his residence." *Id.* Officer Cawiezell represented that this RCI had provided reliable information to the TPD on more than three prior occasions, including information that led to arrests for drug offenses and seizures of firearms.

The second affidavit included much of the information from the first affidavit. In addition, it detailed the first search and the contraband recovered. Officer Cawiezell described the trash search which led to the discovery of two items, one with trace amounts of marijuana and another "consistent with packaging narcotics." *Id.* at 159. He also stated that, after this evidence was taken back to the police department, a K9 "gave a positive alert to the presence of narcotics." *Id.*

3

**Officer Cawiezell's Trial Testimony**

At trial, defense counsel cross-examined Officer Cawiezell.  Counsel asked about the two firearms, a rifle and a pistol, recovered from defendant's residence:

> Q.  You never saw him with that rifle, did you?
>
> A.  Correct.
>
> Q.  No one ever told you they saw with him that rifle; correct?
>
> A.  Correct.
>
> . . . .
>
> Q.  You never saw him with the pistol, did you?
>
> A.  I did not.
>
> Q.  No one has ever told you they saw him with the pistol either, have they?
>
> A.  They have not.

Rec., vol. III at 129–30.  Defense counsel also asked the officer questions about the methamphetamine recovered during the search:

> Q.  And you don't know whether the methamphetamine was in the residence before Mr. McKinney was there, do you?
>
> A.  I do not.
>
> . . . .
>
> Q.  You've never seen him with any methamphetamine, have you?
>
> A.  I have not.
>
> Q.  He had none on his body when you arrested him, did he?
>
> A.  He did not.

Q.  You've never seen any photographs of Mr. McKinney with any methamphetamine, have you?

A.  I have not.

Q.  So you don't know if Mr. McKinney ever laid eyes on that methamphetamine, do you?

A.  I do not.

*Id.* at 131–32.  Defense counsel asked the officer similar questions about the heroin recovered from defendant's residence:

Q.  And you never saw him with the heroin, did you?

A.  Correct.

Q.  And no one has ever told you that they ever saw him with any heroin, have they?

A.  No.

*Id.* at 138.  Officer Cawiezell was not questioned, and did not testify, about the RCI or the affidavits.

## Standard of Review

Defendant did not assert a *Franks* claim in district court.  However, the parties agree that his claim is not waived under Fed. R. Crim. P. 12(b) because it is based on Officer Cawiezell's trial testimony and was not "reasonably available" before trial.  *See* Fed. R. Crim. P. 12(b)(3).  Accordingly, we review his claim for plain error.  *See United States v. Iiland*, 254 F.3d 1264, 1267 n.1 (10th Cir. 2001).

**Discussion**

On appeal, defendant alleges a Fourth Amendment violation under *Franks*.  A

*Franks* violation occurs if "(1) an officer's affidavit supporting a search warrant

application contains a reckless misstatement or omission that (2) is material because, but

for it, the warrant could not have lawfully issued."  *United States v. Herrera*, 782 F.3d

571, 573 (10th Cir. 2015).  The defendant must prove both recklessness and materiality to

obtain relief.  *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020).

A defendant is entitled to an evidentiary hearing if he makes a "substantial

preliminary showing" that a violation has occurred.  *Id.* (quoting *Franks*, 438 U.S. at

155).  To make the requisite showing of recklessness, a defendant must furnish evidence

"that the officer in fact entertained serious doubts as to the truth of his allegations."

*United States v. Xiang*, 12 F.4th 1176, 1182–83 (10th Cir. 2021) (internal quotation

marks and citation omitted).  In other words, a defendant must show that the officer acted

with "deliberate falsehood or [] reckless disregard for the truth."  *Franks*, 438 U.S. at

171.  "Allegations of negligence or innocent mistake are insufficient."  *Id.*

## A. Suppression of the Evidence

Defendant argues that the evidence recovered during both searches should be

suppressed because Officer Cawiezell's trial testimony is inconsistent with statements

made in his affidavits.[1]  According to defendant, the testimony shows that Officer

Cawiezell made material and reckless misstatements in the affidavits.

Specifically, defendant highlights three statements from Officer Cawiezell's

testimony: (1) no one told him they saw defendant with the rifle or pistol recovered

during the first search; (2) no one told him they saw defendant with "any heroin"; and

(3) he did not know whether the methamphetamine recovered in the search was at the

residence before defendant was there or if defendant had ever seen *that*

methamphetamine.  Defendant argues this testimony contradicts affidavit statements

about what the RCI told Officer Cawiezell, particularly that: (1) defendant was in

possession of a firearm; (2) defendant was in possession of heroin; and (3) defendant had

recently acquired a large amount of methamphetamine and was storing it at his residence.

These arguments fail because the trial testimony does not contradict the affidavit

statements.  First, the affidavits do not state that the RCI *saw* defendant with a firearm,

the methamphetamine, or the heroin.  It can be true that the RCI told Officer Cawiezell

that defendant was in possession of a firearm and drugs without saying he or she saw

defendant with these items.  For example, the RCI may have been told by defendant or a

---

[1] Defendant primarily challenges the first affidavit.  While he acknowledges that the second affidavit includes relevant information not supplied by the RCI, he argues that information would not have been available but for the illegal first search.  He thus asserts that evidence found in the second search is fruit of the poisonous tree.  He also argues that the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984), does not apply.  Because we conclude that defendant has failed to demonstrate a Fourth Amendment violation, we need not reach these issues.

third party that defendant had possession of them.  It is also possible that the RCI did not disclose the source of the information to Officer Cawiezell at all.

Moreover, the affidavits only state that Officer Cawiezell was informed defendant was in possession of "a firearm," not the specific firearms recovered in the search. Similarly, the questioning at trial concerned the specific methamphetamine recovered during the search whereas the affidavits referenced undefined methamphetamine. Importantly, the RCI provided Officer Cawiezell with information before the searches were conducted.  It would have been difficult, if not impossible, for Officer Cawiezell to know with certainty whether the contraband recovered from defendant's home was the same contraband that the RCI informed him of.

Finally, it can be simultaneously true that: (1) the RCI told Officer Cawiezell defendant had recently acquired methamphetamine; and (2) Officer Cawiezell did not know when the methamphetamine entered the home or whether defendant had seen it. Whether the methamphetamine was at the residence before defendant arrived there or whether defendant saw the methamphetamine is not dispositive of whether he had actual or constructive possession of it.

In his reply brief, defendant argues that if the RCI did not see him with the firearms or drugs then Officer Cawiezell recklessly omitted that information from the affidavits.  Because he did not raise this argument in his opening brief, it is forfeited.  *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019).  In any event, this argument is unpersuasive because the affidavit is facially ambiguous as to the basis of the RCI's knowledge.

8

Furthermore, probable cause may properly be supported by hearsay or information supplied by an informant. *See Franks*, 438 U.S. at 165. Courts take a "totality of the circumstances" approach when making a probable cause determination based on an informant's tip. *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011). Relevant factors include "the informant's veracity, reliability, and basis of knowledge." *Id.* "[A] deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009). Here, even if the basis of the RCI's information was not clear or was in some way lacking, it was bolstered by the RCI's documented history of providing the TPD with reliable information.[2]

To the extent any tension could be found between the testimony and the affidavits, defendant has not provided any evidence to prove that the sworn affidavits, rather than the sworn testimony, were false. He has also not offered any evidence that Officer Cawiezell "entertained serious doubts," *see Xiang*, 12 F.4th at 1182–83, or acted with "deliberate falsehood or [] reckless disregard for the truth," *see Franks*, 438 U.S. at 171. Defendant merely assumes Officer Cawiezell's sworn trial testimony is true and concludes that the officer was "either lying or recklessly mischaracterizing the supposed interactions that he had with the informant in his affidavits." Aplt. Br. at 12. Such conclusory allegations are insufficient because search warrant affidavits are presumed to be valid. *See Franks*, 438 U.S. at 171.

---

[2] The district court rejected the challenges made to the RCI's reliability in defendant's motion to suppress. Those findings have not been appealed and are not before this court.

In his reply, defendant argues that the importance of the RCI's information in establishing probable cause, the depth of Officer Cawiezell's involvement in the investigation, and "the degree of inconsistency" between the statements demonstrate recklessness or intent.  Reply Br. at 6–7.  These arguments are forfeited, but in any event we find them unpersuasive, particularly because we could not find any inconsistency among the statements, much less a significant one.

Finally, it bears noting that Officer Cawiezell was not asked about the RCI or the affidavits at trial.  Rather, the challenged testimony was given in the context of determining whether defendant had exclusive or actual control over the contraband seized during the searches.  Even if the alleged inconsistencies existed, it would not make sense to credit the trial testimony over direct and sworn statements made about the RCI in the affidavits.  Any inconsistency would be more readily explained by a negligent or innocent error made at trial than by a choice to submit an affidavit despite serious doubts about its truthfulness.

## B. *Franks* Hearing

In the alternative, defendant argues he is entitled to a hearing to determine whether there has been a *Franks* violation even though he did not request a hearing in district court.  The parties dispute whether the failure of a district court to hold a *Franks* hearing sua sponte could be plain error.  *Compare Franks*, 438 U.S. at 168 (contemplating "an instance of deliberate falsity" exposed at trial), *and United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017) (holding that a defendant may seek a *Franks* hearing based on inconsistencies between an affidavit and the affiant's trial testimony), *with United States*

*v. Rusnak*, 981 F.3d 697, 705 (9th Cir. 2020) (holding error could not be plain due to a lack of caselaw applying *Franks* in this context).  But we need not reach this question because defendant is not entitled to a hearing.

As described above, defendant has failed to allege that actual inconsistencies between Officer Cawiezell's trial testimony and his affidavits exist.  To the extent that the relevant statements are in tension, defendant has failed to provide any evidence that Officer Cawiezell intentionally or recklessly filed untruthful or incomplete affidavits.  At most, defendant has demonstrated that Officer Cawiezell's testimony should have been clarified at trial.

## Conclusion

Based on the foregoing, we are not persuaded that defendant's Fourth Amendment rights have been violated or that he is entitled to an evidentiary hearing under *Franks*. Accordingly, we affirm.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

11