**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES CASADY CANGRO, a/k/a "Havic,"

    Defendant - Appellant.

No. 25-2079
(D.C. No. 1:22-CR-00775-MLG-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.

_____

After obtaining a warrant, federal officers searched James Casady Cangro's part-time residence. There, as expected, they found distribution quantities of drugs and over a dozen firearms. A federal grand jury then indicted Cangro for various drug and firearms offenses.

Cangro moved to suppress evidence from the search. He argued that the warrant lacked probable cause and that the good-faith exception to the exclusionary rule didn't apply. He also argued that the search-warrant affidavit

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

contained material misstatements and omissions in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). So he requested a *Franks* hearing.

The district court held a hearing on Cangro's motion to suppress and let him present evidence supporting his *Franks* challenge. But a few weeks later, the court denied his motion. It ruled that the exclusionary rule's good-faith exception applied. And it denied Cangro's *Franks* challenge after concluding that he failed to make the substantial preliminary showing necessary to merit a *Franks* hearing.

Cangro pleaded guilty but reserved his right to appeal the suppression decision. He then timely appealed, arguing that the search-warrant affidavit didn't provide probable cause, that the good-faith exception doesn't apply, and that the affidavit contained material misstatements and omissions.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Even accounting for the alleged misstatements and omissions, the affidavit provided probable cause for the search. So the district court correctly denied Cangro's motion to suppress.

## BACKGROUND

### I.     Factual Background

In early 2022, FBI special agent Bryan Acee learned from a confidential informant that Cangro was selling drugs and firearms. After some investigation, Agent Acee sought a search warrant for Cangro's part-time residence at 5312 Euclid Avenue NE, Albuquerque, New Mexico, to search for drug-trafficking

evidence and firearms.[1] Agent Acee swore a supporting affidavit, which we summarize below.

### A.    The Search-Warrant Affidavit

### 1.    Confidential Informant's Tips

The affidavit relied primarily on the confidential informant's tips. That informant was a former drug distributor and illegal-alien smuggler with close gang ties. Agent Acee recruited the informant "a few years ago," and since then, the informant had helped him collect evidence against gang members and "criminal enterprises." R. vol. II at 52–53 n.4. The informant was "motivated to assist the FBI to help reduce violent crime and drugs in the community." *Id.* The informant had one prior felony conviction but no pending charges. Nor did the informant receive financial assistance from the FBI.

Turning to the informant's tips, the affidavit stated that in February 2022, the informant reported that Cangro "was involved in drug distribution, unlawful firearms possession and other criminal activity." *Id.* at 52–53. The informant also said that Cangro was using steroids and usually carried a black handgun.

Based on these tips, Agent Acee started investigating Cangro. He soon learned that Cangro was living with a woman at 3413 Ross Avenue SE, Albuquerque, New Mexico. He also learned that federal probation officers had searched the Ross Avenue apartment in September 2021 to investigate whether

---

[1] The warrant also sought to search Cangro for gang tattoos.

the woman had violated her supervised-release terms.[2] During that search, probation officers found a ballistic vest and other contraband, including two glass methamphetamine pipes, syringes, steroids, and a pistol-magazine loader. Cangro, who was present during the search, admitted that the ballistic vest was his.

Later, as part of his investigation into Cangro, Agent Acee obtained a warrant to search the woman's phones. That search uncovered selfies of Cangro posing with cash and displaying his gang tattoos, plus photos of a cat near what looked like a black pistol.

Next, the affidavit stated that in early April 2022, the informant "communicated with [Cangro] and learned [he] had firearms" and "fentanyl pills for sale." *Id.* at 55. But soon before Agent Acee swore the affidavit, the informant learned that Cangro was splitting his time between two houses, and that he was staying at a house on a cul-de-sac behind a certain school in Albuquerque.[3] The informant also said that Cangro was living there with a woman who drove a silver BMW.

Agent Acee drove to the location that the informant had described and spotted Cangro's car parked outside 5312 Euclid Avenue NE. He also saw a

---

[2] The affidavit noted that probation officers warned the woman about the search in advance.

[3] Agent Acee had secured a warrant to search the Ross Avenue apartment but decided not to execute it after "agents observed [Cangro] vacate" that residence. R. vol. II at 56–57.

trailer out front with several moving boxes nearby, as well as a silver BMW parked in the driveway. The next day, he again saw Cangro's car parked outside the same address and saw Cangro walk inside the residence. So based on the informant's tip and his own observations, Agent Acee believed that Cangro was living part time at the Euclid Avenue house.

Finally, just a few days before Agent Acee swore the affidavit, the informant again "communicated with [Cangro] and confirmed he had firearms and fentanyl for sale." *Id.* at 58.

### 2. Other Information

On top of the tips, the affidavit explained that Agent Acee had been investigating "a group of subjects" in Albuquerque, including Cangro, who he suspected were affiliated with "racially motivated" gangs and involved in drug and firearm trafficking. *Id.* at 51–52. Relatedly, the affidavit stated that Cangro was a validated member of the Soldiers of Aryan Culture, a white-supremacist prison gang. And it noted that Cangro had prior convictions and was wanted by the FBI.

The affidavit also discussed Agent Acee's background. When he swore the affidavit, he had over twenty-two years of law-enforcement experience. He had worked for the FBI since 2009 and had particular experience investigating drug-trafficking organizations and gang enterprises. From his training and experience, he attested that drug traffickers often keep evidence of their unlawful activities in their homes.

5

**B.     The Search**

Based on the information in the affidavit, a federal magistrate judge issued the search warrant for the Euclid Avenue house. During the search, officers found distribution quantities of methamphetamine and fentanyl, plus over a dozen firearms.

## II.    Procedural History

On April 8, 2022, a federal magistrate judge approved a criminal complaint charging Cangro with possessing body armor as a felon.[4] Ten days later, a different magistrate judge approved the search warrant for the Euclid Avenue house. Soon after, officers arrested Cangro in the Southern District of California. Then about ten months later, the California federal court ordered Cangro's extradition to the District of New Mexico. On May 10, 2022, a federal grand jury in New Mexico indicted Cangro on nine counts of various drug and firearms offenses.[5]

---

[4] This charge was based on the ballistic vest that probation officers recovered from the September 2021 search of the Ross Avenue apartment.

[5] The indictment charged Cangro with possessing body armor as a violent felon (Counts 1–2), possessing a firearm and ammunition as a felon (Count 3), possessing an unregistered firearm (Counts 4–5), possessing fentanyl with intent to distribute (Count 6), possessing methamphetamine with intent to distribute (Count 7), possessing a short-barreled shotgun in furtherance of a drug-trafficking crime (Count 8), and possessing a firearm in furtherance of a drug-trafficking crime (Count 9).

### A.    Motion to Suppress

Cangro moved to suppress evidence from the search. He argued that officers lacked probable cause because the warrant affidavit didn't establish a nexus between the Euclid Avenue house and the suspected criminal activity. He also argued that the affidavit didn't establish the informant's veracity, reliability, or basis of knowledge.

What's more, Cangro argued that the search-warrant affidavit contained material misstatements and omitted key information. So he requested a *Franks* hearing.[6] He identified seven alleged misstatements and omissions[7] and attached several supporting exhibits, including his own declaration. He also provided a marked-up search-warrant affidavit reflecting the alleged misstatements and omissions. In his view, this modified affidavit wouldn't have provided probable cause for the search. So he argued that the alleged misstatements and omissions were material, thus warranting suppression under *Franks*.

---

[6] Under *Franks*, a defendant is entitled to an evidentiary hearing on a warrant affidavit's veracity if he makes a "substantial preliminary showing" that the affiant knowingly or recklessly included material falsehoods in the affidavit. 438 U.S. at 155–56.

[7] For example, Cangro contended that the affidavit misrepresented his continuing involvement with the Soldiers of Aryan Culture and a larger drug-trafficking conspiracy.

In response, the government argued that the affidavit established probable cause for the search, that the good-faith exception applied, and that Cangro didn't make the substantial preliminary showing necessary for a *Franks* hearing.

## B.    Hearing

The district court held an evidentiary hearing on the suppression motion.[8] There, the court emphasized that it was concerned about whether the affidavit satisfied the Fourth Amendment's nexus requirement. But the parties pushed *Franks* arguments instead. After some back and forth, the court let Cangro proffer evidence supporting his *Franks* challenge—but only because the court wasn't sure of the standard for granting or denying Cangro's request and wanted to "err on the side of full disclosure and full information." R. vol. III at 111.

So Cangro called a private investigator to testify, who elaborated on the alleged misrepresentations in the affidavit. Cangro also introduced exhibits, including some that he hadn't attached to his suppression motion.

## C.    Suppression Order

The district court denied Cangro's motion to suppress. Skipping to the good-faith exception, the court concluded that the affidavit created a "minimal nexus" between Cangro and the Euclid Avenue house, "such that [Agent Acee]

---

[8] The court's text order setting the hearing didn't state whether or not it was a *Franks* hearing.

was entitled to rely on the Magistrate Judge's authorization of the requested warrant." R. vol. II at 95–96 (citation omitted). In support, the court spotlighted the informant's tips, that Agent Acee corroborated Cangro's move to the Euclid Avenue house, and Agent Acee's training and experience.

The court then addressed Cangro's *Franks* challenge. It explained that it had "held a *Franks* hearing . . . in the interest of full disclosure and full information." *Id.* at 99 (citation modified). But "[d]espite holding the hearing," the court ruled that Cangro "did not make a substantial preliminary showing before the *Franks* hearing that [Agent Acee] knowingly and intentionally or recklessly included false statements or omitted others."[9] *Id.* So the court denied "Cangro's request to alter the warrant to account for the purported misrepresentations and omissions under *Franks*." *Id.* at 99–100.

### D.   Guilty Plea, Sentencing & Appeal

Cangro pleaded guilty to seven of the charged counts, reserving his right to appeal the suppression denial. The court sentenced him to 132 months' imprisonment and five years' supervised release.

Cangro timely appealed. He argues that the affidavit didn't provide probable cause for the search and that the good-faith exception doesn't apply.

---

[9] The court held that Cangro hadn't made this showing because he didn't attach some of the hearing exhibits to his initial suppression motion.

He also argues that the court should have considered evidence presented at the *Franks* hearing and granted his motion to suppress on *Franks* grounds.

## STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous." *United States v. Cates*, 73 F.4th 795, 805 (10th Cir. 2023) (citation modified). But we review de novo the "[u]ltimate determinations of reasonableness concerning Fourth Amendment issues and other questions of law." *Id.* (citation omitted).

## DISCUSSION

### I.    Legal Framework

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also requires that warrants "issue" only "upon probable cause." *Id.*

A search-warrant affidavit provides probable cause if it creates "a substantial basis to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Alqahtani*, 73 F.4th 835, 842 (10th Cir. 2023) (citation omitted). Whether probable cause exists depends on the totality of the circumstances. *See United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). The affidavit also must "establish a nexus between the contraband to be seized or suspected

10

criminal activity and the place to be searched." *Alqahtani*, 73 F.4th at 842 (citation modified). "Whether a nexus exists to search a suspect's home depends on the strength of the case-specific evidence that links suspected criminal activity and the home." *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021).

Under the exclusionary rule, the government can't introduce evidence obtained in violation of the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 231–32 (2011). But this rule has some exceptions, including "the *Leon* good-faith exception." *United States v. Pacheco*, 884 F.3d 1031, 1041–42 (10th Cir. 2018) (citing *United States v. Leon*, 468 U.S. 897 (1984)).

Under the good-faith exception, suppression isn't required "if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). But the exception doesn't apply in four situations: (1) "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandon[ed] her judicial role"; (3) the search-warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant was "so facially deficient that the executing officer could not reasonably believe it was valid." *Id.* at 1007 (citation modified).

11

The first situation—misleading the magistrate judge through knowingly false information—is the subject of the Supreme Court's decision in *Franks*. *See Leon*, 468 U.S. at 923. In *Franks*, the Court paved the way for defendants to challenge the veracity of search-warrant affidavits. 438 U.S. at 155. The defendant must first make "a substantial preliminary showing" that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause."[10] *Id.* at 155–56. If the defendant makes this showing, the court must hold a hearing. *Id.* Then if, at that hearing, the defendant establishes "the allegation of perjury or reckless disregard . . . by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded." *Id.* at 156.

Cangro's appeal touches on all of these principles. He argues that officers lacked probable cause for the search and that the good-faith exception doesn't apply. He also argues that Agent Acee's affidavit violated *Franks* and

---

[10] To make that substantial preliminary showing, the defendant "must produce evidence of the complained-of defects by offering affidavits or sworn or otherwise reliable statements of witnesses." *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020) (citation modified). "If the defendant cannot produce such evidence, he must explain why he cannot do so." *Id.*

12

that the district court erred by rejecting Cangro's *Franks* arguments on the substantial-preliminary-showing requirement.

Our analysis begins and ends with probable cause. Even accounting for the alleged misstatements and omissions, the affidavit provided probable cause for the search. That means that none of the alleged misrepresentations were material, which obviates Cangro's *Franks* challenge. *See United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015) (holding that to decide materiality, we consider whether the affidavit supports probable cause without the misstatements and with the omitted information). Thus, the district court properly denied his motion.[11]

## II.    Probable Cause

Cangro argues that the search-warrant affidavit lacked probable cause for two reasons: the confidential informant's tips were uncorroborated, and nothing connected the Euclid Avenue house to any criminal activity. We disagree on both points.

---

[11] Though the district court resolved Cangro's motion on the good-faith exception, we may affirm on alternate grounds if they "are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal." *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016). The parties fully briefed probable cause, and it is an adequate and apparent ground for affirmance. To the extent that Cangro challenges the court's resolving his motion on the good-faith exception without addressing probable cause, his challenge fails. Courts may jump right to the good-faith exception. *Danhauer*, 229 F.3d at 1005.

A.    **Confidential Informant's Tips**

"[P]robable cause can be based solely on information from a reliable, credible informant." *United States v. Long*, 774 F.3d 653, 660 (10th Cir. 2014) (collecting cases). But to provide probable cause, an informant's statement must be "reasonably corroborated by other matters within the officer's knowledge." *Id.* at 659 (citation modified).

"[C]orroborating circumstances need not be observations specific to the alleged wrongdoing supporting the warrant." *Id.* Instead, "circumstances showing the trustworthiness of the informant" may suffice. *Id.* So courts often focus on an informant's "[v]eracity, reliability, and basis of knowledge . . . in deciding whether a tip can support probable cause." *United States v. Campbell*, 603 F.3d 1218, 1234 (10th Cir. 2010).

The search-warrant affidavit established the informant's veracity, reliability, and basis of knowledge.[12] First, "[v]eracity concerns whether there is reason to believe that the informant is telling the truth." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009). Agent Acee knew the informant's identity, which is "one indicator of veracity." *United States v. Pulliam*, 748 F.3d 967, 971 & n.2 (10th Cir. 2014). Another indicator is

---

[12] True, the district court stated that "[t]he [informant's] accusations were never corroborated." R. vol. II at 90. But read in context, this meant only that officers didn't corroborate Cangro's alleged wrongdoing through direct observation. In fact, the court later highlighted the informant's veracity and reliability.

14

"whether [the informant] faces criminal charges or whether his statement is against his own penal interest." *Quezada-Enriquez*, 567 F.3d at 1233. And the affidavit explained that the informant wasn't facing criminal charges.

Second, reliability concerns "whether the informant has provided accurate information in the past." *Id.* And here, the affidavit explained the informant's "history of providing accurate (corroborated) information." *Long*, 774 F.3d at 659. It stated that Agent Acee recruited the informant "a few years ago" and that the informant had helped him collect evidence against gang members and "criminal enterprises." R. vol. II at 52–53 n.4. In fact, the informant's tips "led to the issuance of 4 federal search warrants, the arrest of three subjects on federal charges, and the recovery of firearms, ammunition, U.S. currency and large quantities of controlled substances." *Id.* The affidavit also noted that none of the informant's information had "been found to be false or misleading." *Id.*

What's more, Agent Acee corroborated the informant's tip about Cangro's move. Again, the informant told Agent Acee that Cangro was staying at a house on a cul-de-sac behind a certain school. The informant also said that Cangro lived there with a woman who drove a silver BMW. Then, during surveillance, Agent Acee spotted Cangro's car parked outside a house in the neighborhood that the informant had identified. He also saw a trailer and moving boxes, as well as a silver BMW in the house's driveway. So Agent Acee's corroborating this tip also supports the informant's reliability.

15

Third, "for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information." *Quezada-Enriquez*, 567 F.3d at 1233. And the affidavit explained that the informant communicated directly with Cangro. *See United States v. Mathis*, 357 F.3d 1200, 1206 (10th Cir. 2004) (affirming on clear-error review that an affidavit established basis of knowledge by stating that the informants personally knew the defendant and his residence).

In sum, the affidavit established the informant's veracity, reliability, and basis of knowledge, meaning the informant's statements were sufficiently corroborated. *See Long*, 774 F.3d at 659.

## B.    Nexus Requirement

Cangro next argues that the affidavit didn't create a nexus between any criminal activity and the Euclid Avenue house.[13] He emphasizes that neither the informant nor the officers observed any criminal activity occurring there. And he says that nothing else in the affidavit established that he kept contraband there, either.

We disagree. In *United States v. Sanchez*, we held that "when police officers have probable cause to believe that a suspect is involved in drug distribution, there is also probable cause to believe that additional evidence of

---

[13] Cangro doesn't contest that the affidavit sufficiently connected *him* to the Euclid Avenue house. Instead, he argues only that the affidavit didn't connect the house to any *criminal activity*.

16

drug-trafficking crimes . . . will be found in his residence." 555 F.3d 910, 914 (10th Cir. 2009). In fact, drug trafficking falls "in a special class of crimes" that doesn't require "particular facts to support the inference that a drug trafficker keeps his supply at his residence." *Mora*, 989 F.3d at 801 (citation omitted). Instead, the affiant can support that inference "merely on the basis of [his] experience that drug dealers ordinarily keep [evidence] at home." *Id.* (citation omitted); *see also United States v. Becker*, 168 F.4th 1337, 1344 (10th Cir. 2026).

Thus, to meet the Fourth Amendment's nexus requirement, the affidavit didn't need to include a direct observation of criminal activity, or even particular facts tying Cangro's drug-trafficking activity to the Euclid Avenue house. *See Sanchez*, 555 F.3d at 914; *Mora*, 989 F.3d at 801. Instead, Agent Acee's statement that drug traffickers often keep evidence in their homes "filled" "that factual gap." *Becker*, 168 F.4th at 1344 (citation modified).

That said, the affidavit did need to establish "probable cause to believe that [Cangro] [wa]s involved in drug distribution." *See Sanchez*, 555 F.3d at 914. But the confidential informant's tips do just that. According to the informant, more than once, Cangro said that he had "firearms and fentanyl for sale" and that the informant should "contact him whenever the [informant] needed a gun or blues (fentanyl pills)." R. vol. II at 58. These statements—provided by a credible and reliable informant—"create[d] a fair probability

17

that" Cangro was distributing drugs and firearms. *See Quezada-Enriquez*, 567 F.3d at 1233 (citation modified).

Based on all that, we find the nexus requirement satisfied here. The informant's tips about Cangro's drug-trafficking activity, plus Agent Acee's statement that drug traffickers often keep evidence in their homes, was enough to create a nexus between Cangro's drug-trafficking activity and the Euclid Avenue house. *See Sanchez*, 555 F.3d at 914; *Mora*, 989 F.3d at 801.

Other parts of the affidavit supported probable cause, too. "[C]riminal history, combined with other factors, can support a finding of . . . probable cause." *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004). And the affidavit described Cangro's criminal history, including a federal conviction for using a firearm in furtherance of drug-trafficking. Not to mention that he was wanted by the FBI for possessing ballistic armor as a violent felon. The affidavit also described the September 2021 search of the Ross Avenue apartment and the contraband that officers discovered there, including a ballistic vest, glass pipes, syringes, steroids, and a pistol-magazine loader. This contraband further supported Agent Acee's belief that Cangro would keep drug-trafficking evidence and firearms at his residence.

The cases that Cangro relies on don't convince us otherwise. He points us to *Danhauer*, 229 F.3d 1002, and *United States v. Cordova*, 792 F.3d 1220 (10th Cir. 2015). But both cases are distinguishable.

In *Danhauer*, officers received a tip that the defendant and his wife were cooking methamphetamine in their garage. 229 F.3d at 1004. Officers verified the informant's description of the house and confirmed that the couple lived there. *Id.* They also learned that the couple had criminal records and outstanding arrest warrants. *Id.* So the officers sought and received a search warrant for the house. *Id.*

We held that the affidavit didn't provide probable cause for the search. *Id.* at 1006. But crucially, the affidavit didn't establish the informant's reliability, veracity, or basis of knowledge. *See id.* at 1006–07. Agent Acee's affidavit, on the other hand, established all three.

Turning to *Cordova*, officers there executed a warrant to search the defendant's home for drug-trafficking evidence. *See* 792 F.3d at 1221–22. But the affidavit "was devoid of any facts supporting the inference that [the defendant] or his home were involved with . . . [an] ongoing drug enterprise." *Id.* at 1224. In fact, the affidavit included only two facts purportedly connecting the defendant to criminal activity. *See id.* at 1225. It stated that "a high-volume drug delivery was set to be made to a vehicle parked in front of [the defendant's] former home nearly two years before officers sought a warrant for his current home." *Id.* at 1226. And it stated that "one party to that drug deal was present at [the defendant's] current residence on one occasion four months before the warrant was executed." *Id.* We held that the affidavit was "so removed from implicating [the defendant] or his current residence that

19

it amounts to nothing more than a hunch," precluding application of the good-faith exception. *Id.*

Here, though, Agent Acee's affidavit included tips from a trusted informant that Cangro was selling drugs and guns. In fact, mere days before Agent Acee executed the warrant, the informant "communicated with [Cangro] and confirmed he had firearms and fentanyl for sale." R. vol. II at 58. So unlike the affidavit in *Cordova*, Agent Acee's affidavit included facts connecting Cangro to recent drug-trafficking activity.

Finally, Cangro also points to cases like *United States v. Biglow*, 562 F.3d 1272 (10th Cir. 2009), that in his view, involved affidavits that "included more than [in] the case here." Reply Br. at 4. Even if we accept that those affidavits "included more," that doesn't render the affidavit before us insufficient. We look at only "the four corners of the affidavit" and any other materials provided to the issuing judge, *United States v. Blasdel*, 153 F.4th 1069, 1075 (10th Cir. 2025), to determine whether the judge had "a substantial basis for determining the existence of probable cause," *United States v. Knox*, 883 F.3d 1262, 1272 (10th Cir. 2018) (citation omitted).

We think that standard was met here. The informant's tips, Agent Acee's training and experience, Cangro's criminal history, and information related to the September 2021 probation search gave the magistrate judge "a substantial basis to conclude that there [was] a fair probability" officers would find drug-trafficking evidence and firearms at the Euclid Avenue house. *See Alqahtani*,

73 F.4th at 842 (citation omitted). So the district court correctly denied Cangro's motion to suppress.[14]

## III.   *Franks* Challenge

Cangro also attacks the district court's denial of his *Franks* challenge. He argues that the affidavit was "full of information that [Agent Acee] knew to be false." Op. Br. at 9. For example, Cangro argues that the affidavit misrepresented his continued involvement with the Soldiers of Aryan Culture and in a larger drug-trafficking conspiracy.

Relatedly, Cangro faults the district court's treatment of his *Franks*-related evidence. In essence, he argues that because the court held a *Franks* hearing, it erred by rejecting his *Franks* arguments based on his failure to make a substantial preliminary showing. Instead, he argues that the court should have considered the evidence he presented at the hearing, concluded that Agent Acee violated *Franks*, and suppressed evidence from the search.

But none of the misstatements or omissions that Cangro identifies relate to the information that we relied on to find probable cause. So even if we altered the affidavit to account for those alleged misstatements and omissions,[15]

---

[14] Because the affidavit provided probable cause, we need not consider whether the good-faith exception applies. *See Becker*, 168 F.4th at 1344.

[15] Because we account for the alleged misstatements and omissions, we need not address whether the district court erred by rejecting Cangro's *Franks* arguments on the substantial-preliminary-showing requirement. *Cf. United States v. Avery*, 295 F.3d 1158, 1167–69 (10th Cir. 2002) (resolving *Franks*

(*footnote continued*)

the affidavit would still provide probable cause for the search. This, in turn, means that there was no *Franks* violation, because none of the alleged misstatements or omissions were material. *See Herrera*, 782 F.3d at 575. Cangro's *Franks* challenge fails.

## CONCLUSION

For these reasons, we affirm the district court's denial of Cangro's motion to suppress.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

challenge involving similar procedural history by considering merits of *Franks* arguments), *abrogated on other grounds by*, *United States v. O'Brien*, 560 U.S. 218, 235 (2010).

No. 25-2079, *United States v. Cangro*

**McHUGH**, Circuit Judge, concurring:

I agree with the majority that we should affirm the district court's denial of the motion to suppress but, like the district court, I would rely on the good-faith exception to the exclusionary rule to do so. Accordingly, I first discuss the parameters of the good-faith exception and our standard of review on appeal. I then consider Mr. Cangro's arguments that the exception is inapplicable here, explaining why I disagree. Ultimately, I conclude the district court correctly applied the good-faith exception to the exclusionary rule here and would affirm on that basis.

## I.　　LEGAL BACKGROUND

### A.　　*Good-Faith Exception and Standard of Review*

Although the Fourth Amendment is silent as to the proper remedy for a Fourth Amendment violation, courts have created the exclusionary rule, under which "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). "[T]he [exclusionary] rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures[.]" *Id.* Put succinctly, the exclusionary rule is not a constitutional right of the defendant, but rather a disincentive for law enforcement to engage in unconstitutional activity.

Recognizing that the exclusionary rule does not deter law enforcement when they act in good-faith reliance on a search warrant, the Supreme Court in *United States v.*

*Leon*, 468 U.S. 897, 918 (1984), held that the "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." When an officer acts in objective good faith in obtaining a search warrant from a detached, neutral magistrate, and then acts within the scope of that warrant, no police illegality occurs that the exclusionary rule would deter. *Id.* at 920–21. Thus, evidence seized through such means should not be suppressed. *Id.* at 921.

But our deference to warrants is not "boundless." *Id.* at 914. Law enforcement officials are presumed to have a reasonable knowledge of the law. *Id.* at 919 n. 20. The Supreme Court described four exceptions to the good-faith rule. We will not defer to reliance on a warrant where (1) the magistrate relied on an affidavit containing "knowing or reckless falsity," (2) the magistrate failed to "manifest that neutrality and detachment demanded of a judicial officer" and instead acted as "an adjunct law enforcement officer," (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *Id.* at 914, 923 (internal quotation marks and citations omitted).

### B.    *Standard of Review*

Our review of the application of the good-faith exception is de novo. *United States. v. Knox*, 883 F.3d 1262, 1268 (10th Cir. 2018). In determining whether the good-faith exception should be applied, the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that

2

the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. In making this determination, we consider "all of the circumstances," *id.*, and assume the executing officers have "a reasonable knowledge of what the law prohibits," *id.* at 919 n.20.

Further, we have discretion "to address probable cause or to proceed directly to good faith" in reviewing the denial of a motion to suppress. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). However, where "resolution of a Fourth Amendment issue is 'necessary to guide future action by law enforcement officers and magistrates,'" we may find it appropriate to address the adequacy of the search warrant's probable cause determination first. *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (quoting *Leon*, 468 U.S. at 925). Here, I would skip the probable cause determination and proceed directly to our de novo review of the district court's application of the good-faith exception.

## II.    DISCUSSION

### A.    *The Parties' Arguments*

Mr. Cangro argues that the affidavit was (1) "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and (2) "so facially deficient that the executing officer could not reasonably believe it was valid."[1]

---

[1] Mr. Cangro also makes a *Franks v. Delaware*, 438 U.S. 154 (1978), challenge arguing that the magistrate judge relied on an affidavit containing information that was "knowingly or recklessly false." Appellant's Br. at 5. The good-faith exception does not apply to warrants issued because of a *Franks* violation. *United States v. Leon*, 468 U.S. 897, 923 (1984). However, the statements that Mr. Cangro asserts are false all relate to whether there is probable cause to believe that Mr. Cangro was involved in criminal activity. As described by the majority decision, the informant's tip was sufficient to support a finding of probable cause that Mr. Cangro was involved in criminal activity,

Appellant's Br. at 15. Mr. Cangro maintains that no reasonable officer should have relied on an affidavit so clearly omitting any nexus between criminal activity and the place to be searched. He further contends that the officer executing the warrant failed in his duty to ensure that the warrant was not devoid of factual support.

The Government disagrees and argues that, even if the warrant does not establish probable cause, the district court correctly concluded that the officers executed the warrant in good faith. The Government provided background about the informant's reliability and described how the informant reported that Mr. Cangro had offered to sell drugs and firearms to the informant just days before the warrant was issued. The Government also explained how illegal items were found where Mr. Cangro lived seven months earlier and provided photos of a gun, Mr. Cangro holding cash, and Mr. Cangro displaying gang tattoos. Finally, the Government points to Mr. Cangro's status as a felon, member of the Soldiers of Aryan Culture gang, and that he was wanted for being a felon in possession of ballistic armor.

---

apart from any alleged misstatements. *See United States v. Long*, 774 F.3d 653, 660 (10th Cir. 2014) ("[P]robable cause can be based solely on information from a reliable, credible informant."). Accordingly, the allegedly false statements were not material to the purpose for which the statements were allegedly offered. *See United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020) ("[I]n order to obtain any sort of relief under Franks, a defendant must show both recklessness and materiality.").

But "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). Rather, "additional evidence" must link the place to be searched to "the suspected criminal activity." *Id.* Because Mr. Cangro's *Franks* challenge does not relate to this nexus requirement, it does not provide a basis to conclude that good faith should not apply in assessing whether that nexus was present.

As to nexus, the Government contends that the affidavit establishes a sufficient nexus between Mr. Cangro and the Euclid Residence based on information from the informant that Mr. Cangro had moved to that address, as well as follow-up surveillance of Mr. Cangro there with moving boxes. Although the Government admits no one observed drug or firearm crimes occurring at the Euclid Residence, it argues that good faith's minimal nexus does not require that hard evidence link a defendant's suspected unlawful activity to his home. The affidavit connected Mr. Cangro to both criminal activity and the Euclid Residence. Because Agent Acee stated that, in his experience, drug traffickers usually keep evidence of drug trafficking in their home, the Government argues that it was reasonable for executing officers to infer that a sufficient nexus had been established.

### B.     Analysis

A warrant meets the facial deficiency *Leon* exception when it "fail[s] to particularize the place to be searched or the things to be seized" such that "the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923. Mr. Cangro does not actually make any argument about the facial invalidity of the warrant. Instead, his arguments all relate to the third *Leon* exception, arguing that it was not reasonable to rely on the affidavit.

However, a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" only when "reliance is so wholly unwarranted that good faith is absent." *Knox*, 883 F.3d at 1273–74 (internal quotation marks and citations omitted). We have recognized this as a high standard and have said that an officer is wholly unwarranted in relying on a warrant "only if the affidavit

5

submitted in support of the warrant is *devoid* of factual support." *United States v. Henderson*, 595 F.3d 1198, 1201–02 (10th Cir. 2010). "An affidavit is not devoid of factual support if it establishes a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Campbell*, 603 F.3d 1218, 1231 (10th Cir. 2010) (internal quotation marks and brackets omitted). This minimal nexus requirement does not require that "hard evidence or personal knowledge of illegal activity link a Defendant's suspected unlawful activity to his home." *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009) (internal quotation marks omitted).

Still, "[f]or good faith to exist, there must be *some* factual basis connecting the place to be searched to the defendant or suspected criminal activity." *Gonzales*, 399 F.3d at 1231 (emphasis in original). And we have said that when such a connection is wholly absent, the affidavit is so lacking in probable cause as to render official belief in its existence unreasonable. *Id.* Thus, in *United States v. Gonzalez*, we found that where the affidavit listed an address and stated the affiant's opinion that firearms are often kept in the residence, without any information establishing that the suspect resided at the residence, the good-faith exception did not apply. *Id.* And in *United States v. Dutton*, 509 F. App'x 815, 817–18 (10th Cir. 2013) (unpublished), we concluded the good-faith exception did not apply when the affidavit lacked any information connecting the defendant to a storage unit to be searched. *See id.* at 817 ("What is missing, however, is any evidence that the storage unit to be searched was Defendant's.").

In most circumstances, however, we have found that a minimal nexus for good faith was present where *something* suggested that evidence of criminal activity may be

6

found at the place to be searched. In *United States v. Rowland*, 145 F.3d 1194, 1206–08 (10th Cir. 1998), for example, we found that there was no probable cause to search the defendant's home for child pornography video tapes but that the good-faith exception applied. The affidavit described how the suspect had expressed interest in child pornography and that the officers would be doing a controlled drop at his PO box where he typically ordered materials. *Id.* at 1199, 1204. But the affidavit stated that the defendant normally went to work after picking up his mail. *Id.* at 1204. And no evidence suggested that he ever brought illicit materials home. *Id.* Notwithstanding the lack of a sufficient nexus for probable cause, we found that the good-faith exception applied because the affidavit stated that the defendant worked at a government office, making it unlikely that he would store the materials at his place of employment. *Id.* at 1199, 1207. And the affidavit stated that officers would follow the controlled drop and search the residence only if he brought his mail home, which he did. *Id.* at 1207. Thus, a sufficiently minimal nexus between criminal activity and the home was present such that the warrant was not devoid of factual support.[2]

---

[2] Other decisions from this court are also instructive. *See, e.g.*, *United States v. Cotto*, 995 F.3d 786, 797 (10th Cir. 2021) (minimal nexus for good faith found where the defendant drove away from a shooting and car was seen parked in front of the residence to be searched within hours of the shooting); *United States v. Knox*, 883 F.3d 1262, 1267, 1277–78 (10th Cir. 2018) (minimal nexus for good faith applied where the affidavit stated that the defendant's ex-girlfriend had reported that defendant (a felon) always carried a gun and officers had received a ping from the defendant's cell phone placing him at the address to be searched the same day that the warrant was applied for and issued); *United States v. Campbell*, 603 F.3d 1218, 1232 (10th Cir. 2010) (minimal nexus for good faith was present because officers could believe evidence of gang crimes would be found in home where the affidavit stated that the defendant's gang membership had been verified

Here, even assuming without deciding that the affidavit points to no evidence providing a fair probability that evidence of gun or drug trafficking crimes would be found at the Euclid Residence, I would conclude it contains sufficient indicia of probable cause such that officers were not entirely unreasonable in relying on it. Thus, I would conclude the good-faith exception applies. Specifically, the informant stated that Mr. Cangro was living part time in the Euclid Residence, and Agent Acee observed moving boxes at the Euclid Residence as if someone was moving in. Given our typical deference for the inference that drugs will be kept in a person's residence, it was not unreasonable for an officer to believe that the moving boxes signified that the Euclid Residence was now Mr. Cangro's primary residence and that drugs may be found there. Additionally, the informant's reports that Mr. Cangro was paranoid might support an inference that he would keep his fentanyl or firearms at the new residence, rather than at the residence he was leaving. Lastly, Agent Acee attested to his experience that people who illegally possess firearms often do not part with them. Thus, it might be reasonable to believe that Mr. Cangro would not leave any firearms across town from where he was currently staying. Therefore, even if the warrant lacked probable cause, I would hold that

---

through at least one of the listed investigatory methods and the affidavit listed eight gang related crimes involving the defendant); *United States v. Nolan*, 199 F.3d 1180, 1182, 1185 (10th Cir. 1999) (good faith applied where an informant said he had purchased cocaine from the defendant on ten different occasions and that he believed the defendant kept a stash in his house, although he had never been in the house because the defendant was careful not to conduct sales there).

8

it was not so devoid of factual support as to fail to establish a minimal nexus for good faith.

## III.    CONCLUSION

Assuming, without deciding, that the warrant lacked probable cause, the affidavit provided a minimal nexus connecting Mr. Cangro's activities to the Euclid residence such that the officers were entitled to rely on the warrant in good faith. Accordingly, I would affirm the district court's judgment on this basis.